[Crim. No. 3717. First Dist., Div. Two. July 12, 1960.]

THE PEOPLE, Respondent, v. CLYDE R. WALLACE, Appellant.

*Assigned by Chairman of Judicial Council.

John A. Waner, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—On February 27, 1958, the appellant, Clyde R. Wallace, was indicted on six counts of unlawful taking of property in violation of sections 484 and 487 of the Penal Code (theft). A prior conviction for false pretenses was also charged. The appellant denied the prior conviction and entered pleas of not guilty and not guilty by reason of insanity. The appellant was found insane and committed to the state hospital in April, 1958. In January, 1959, the appellant was reexamined and found sane at the time of the commission of the offenses charged by the indictment. Thereafter, on April 7, 1959, the appellant was tried by a jury which found him guilty on three counts and found the allegation of the prior conviction to be true. Thereafter, the appellant waived a jury on his plea of not guilty by reason of insanity. The court concluded that the appellant was sane at the time of the commission of the crimes for which he had been convicted and sentenced him to the state prison. On this appeal from the judgment of conviction and the order denying the motion for a new trial, the only argument is that the evidence is insufficient to sustain the judgment of conviction. There is no merit in this argument.

As to the first count, the record reveals the following: In November, 1957, Frank C. Garland placed an advertisement in the San Francisco Examiner, offering his 1955 Chevrolet for sale. On November 20, 1957, Mr. Garland received a telephone call from the appellant. On November 24, 1957, Mr. Garland went to the appellant's place of business, Holiday Motors at 621 Van Ness Avenue. In reliance on the appellant's representations that he had permits to sell cars in Mexico, Mr. Garland transferred the vehicle to the appellant in return for the appellant's 30-day promissory note for $900. The next day, the car was sold in San Francisco by an employee of the appellant. Mr. Garland never again heard from the appellant. The appellant testified that he could not remember Mr. Gar-

land, but did, however, remember the 1955 Chevrolet and that plans had been made to sell the car in Mexico.

As to Count II, the record reveals that on November 24, 1957, Mrs. Theurer, a widow of 67, had a conversation with the defendant at her home about the 1954 Pontiac registered in the name of her deceased husband, Theodore H. Theurer. The appellant agreed to buy the car. Mrs. Theurer gave the appellant the pink certificate of title in return for his 90-day note for $700. Mrs. Theurer had never seen the appellant before, but trusted him because she thought he was honest. Mrs. Theurer's daughter, Mrs. Overacker and two other witnesses were present during the transaction. Because Mrs. Theurer could not write, Mrs. Overacker wrote the name of her deceased father on a small slip of paper for the appellant. The car was sold on December 5, 1957, in Tucson, Arizona, by "Theodore H. Theurer." Mrs. Theurer never received her $700. When she telephoned the appellant some time in December, he informed her that he had sold the car and lost the money on investments.

The appellant admitted that he went to Mrs. Theurer's home to negotiate for the purchase of the car; that the car had been sold in Arizona for $700, and that Mrs. Theurer was never paid anything on the note. However, he denied forging the name of Theodore H. Theurer on the pink slip and testified that Mrs. Overacker had signed the name of her deceased father on the pink slip. Mrs. Overacker testified that she had written her deceased father's name on a piece of paper and denied signing the pink slip. Mr. Blackman, one of the other witnesses present testified that he saw Mrs. Overacker sign something but did not know who signed the pink slip.

As to the third count, Mrs. Mildred Nikula testified that in October, 1957, she placed an advertisement in the newspaper, offering her 1956 Chrysler for sale. Thereafter, she was contacted by appellant's secretary. Mrs. Nikula took her car to Holiday Motors and after talking to the appellant, left the car with him on a consignment. Four weeks later, the car still had not been sold. Mrs. Nikula called the appellant and told him she would like to take the car back. The appellant then urged her not to take the car because he was close to a sale. When Mrs. Nikula went down to pick up the car in November, 1957, the appellant told her he had a buyer in Mexico and had obtained the proper permits. He told her the car would be taken to Mexico the next day. Mrs. Nikula transferred the car to the appellant in return for his 60-day note.

About a week later, Mrs. Nikula saw the car in a garage in San Mateo, where it was held to secure the loan of the appellant's business partner, Dr. McMurdo. The appellant then told her he needed some additional documents to sell the car and replaced the original note with a 17-day note. The 1956 Chrysler was sold to the Beaudry Motor Company in Tucson, Arizona, on January 11, 1958. The defendant admitted receiving $1,850 for the Chrysler and that Mrs. Nikula was never paid anything.

In addition to the above, 12 other witnesses testified that they had been defrauded by the appellant in similar types of transactions in San Francisco between February 4, 1957, and November 24, 1957. In each instance, the victim was contacted by the appellant or his employee, as the result of a newspaper advertisement; the car was transferred to the appellant for a promissory note. In July, 1957, some of the appellant's creditors authorized a sheriff's closure on his business and the appellant renegotiated some of the above mentioned notes after explaining that he would otherwise have to go into bankruptcy. Although a few payments were made on some of the second notes, none of the victims received full payment for their vehicles. It was also revealed that the defendant's admitted prior conviction in Washington, D. C., arose out of similar transactions where in a period of 60 days, he issued some 60-odd promissory notes totaling $87,000. .

Appellant argues that there is insufficient corroborating evidence to sustain the verdict of guilty of taking property under false pretenses on each of the above counts because he acquired title to the cars lawfully by purchase and there was no evidence that he did not intend to fulfill his promise of paying the notes at the time he executed them.

 It is settled that a conviction of grand theft by false pretenses can rest either on fraudulent statements of a factual character (*People* v. *Martin,* 153 Cal.App.2d 275, 285 [314 P.2d 493]), or on a promise made without intent to perform (*People* v. *Ashley,* 42 Cal.2d 246, 259-265 [267 P.2d 271]; *People* v. *Weitz,* 42 Cal.2d 338 [267 P.2d 295]). Section 1110 of the Penal Code sets forth the proofs necessary to sustain a conviction for obtaining property under false pretenses: (1) either a memorandum of the false pretense signed by the defendant or; (2) the testimony of two witnesses or; (3) the testimony of one witness and corroborating circumstances.

 In the instant case, in each of the transactions there were memorandums signed by the appellant, which alone would

sustain the verdict under the first requirement of section 1110. (*People* v. *Pond,* 44 Cal.2d 665, 672 [284 P.2d 793].) There is ample corroborating evidence as the testimony of each of the three victims was corroborated by the testimony of many others who were similarly defrauded. Essentially similar representations were made to each victim and the basic approach was the same, so that they corroborate each other. (*People* v. *Jones,* 36 Cal.2d 373 [224 P.2d 353]; *People* v. *Weitz,* 42 Cal.2d 338, 347 [267 P.2d 295].) The record is devoid of any evidence that the appellant had obtained either the buyers or the permits to sell cars in Mexico; appellant admits that the victims were never paid in the three transactions of which he was convicted; furthermore, all three of the transactions were entered into after July, 1957, when the appellant well knew he was in a precarious financial position. From this, the jury could readily conclude that the appellant made the representations with intent to defraud. There can be no question that the evidence here amply supports each of the three counts.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.