[Crim. No. 3584. First Dist., Div. One. May 4, 1961.]

THE PEOPLE, Respondent, v. S. G. WINNING et al., Appellants.

Harold J. Truett and Gerald N. Hill, under appointment by the District Court of Appeal, for Appellants.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Charging insufficiency of the evidence, erroneous jury instructions, exclusion of evidence properly admissible, and an error in designation of the statute violated, appellants appeal from convictions in the instant case. The four appellants suffered convictions of conspiracy to commit grand theft and forgery. Appellant Reymenandt was also convicted of attempted extortion. Winning, Richards, and Johnston sustained convictions for forgery. Johnston was also found guilty of grand theft.

The convictions resulted from a sales promotion program undertaken in San Rafael, California, in 1956 and 1957. In order to stimulate sales of cars the Towne-Martin Lincoln-Mercury dealer of that city entered into a contract with a partnership composed of defendant Richards and one Joseph Baber, known as M & S (Management and Sales). The contract ran for one year or for the sale of 300 cars. The employees who participated in the program were those of the Towne-Martin agency, which together with M & S retained the right of hiring and firing.

The sales program rested upon the inducement and reward to customers for procuring other customers. If a purchaser enrolled in the program at the time of the delivery of his new Mercury or Lincoln, he could earn a $100 credit for the first customer he referred to the agency who bought a car and $50 for each such succeeding customer.

The sales-force employed to carry out the plan ultimately reached a roster of 20 persons. Appellant Reymenandt, (referred to in the record as Rem) who joined the force in October, 1956, later, in December, 1956, became office manager "in charge of procedures" for M & S. The management paid the salesmen $50 for each sale they made and $25 for each sale that resulted from a referral. To train the salesmen in their sales approach, appellants Richards and Reymenandt set up a teaching program of taped presentations and written literature.

The procedural steps in completing a sale began with the buyer's signature in blank on the contract papers. Then Towne or Martin either rejected or approved the sale. If approved, a clerical employee, Esther Hildebrandt, inserted the price, computed the interest, completed the documents and mailed the customer a copy of the conditional sales contract. Although, according to Martin, these procedures represented the standard practice of the automobile business, the firm, upon the advent of certain complaints, changed their methods in March 1957, requiring that the contracts be completed before signature.

As a result of these operations, five persons were indicted upon 13 counts; the four appellants stood trial; the fifth defendant, Anders, was not tried.

We shall discuss the specific facts applicable to each count under the appropriate point of appeal.

1. *Appellant Reymenandt did not suffer prejudicial error in his conviction under Count XIII upon the ground that he was indicted, convicted and sentenced under an erroneous section of the Penal Code.*

Appellant Reymenandt charges that his conviction for attempted extortion under Count XIII must be reversed because he was erroneously charged, convicted and sentenced under Penal Code section 664, instead of section 524. The indictment, however, sufficiently apprised appellant of the charge of attempted extortion, and appellant suffered no prejudice in the sentencing; hence, as we shall briefly explain, appellant's conviction should stand.

Appellant cannot successfully contend that the indictment did not sufficiently inform him of the charged offense. The indictment specifically refers to an "attempt to extort," reading: "Violation of Section 664 of the Penal Code of the State of California, in that the said defendant, on or about March 7, 1957, in the County of Marin, State of California, did then

and there attempt to extort $725.00 from Patrick Holderfield and Hazel Holderfield.''

The decisions and the commentators have pointed out that an incorrect designation of the statute upon which the charge rests does not vitiate the indictment, since its charging portion, which follows the words ''in that,'' necessarily controls. Hence the recent case of *People* v. *Rivers* (1961), 188 Cal.App.2d 189, [10 Cal.Rptr. 309] states, ''The purpose of the requirement of certainty in an indictment or information is to apprise the accused of the charges against him so that he may adequately prepare for his defense. It is clear from the language of the information quoted above that the defendant knew he was being charged with the sale of narcotics.'' (P. 195.) Fricke, California Criminal Procedure (4th ed. 1955) summarizes the cases: ''That portion of the form of indictment or information where the offense is to be named has never been considered of much importance. The charging part of the information (that portion following the words 'in that' etc.) determines what offense is charged and a mistake in not properly naming the offense in the preceding portion of the pleading is immaterial unless the defendant is misled thereby, a contingency almost impossible. [Citations.] . . . Even a misstatement in naming the offense by specifying the wrong statute upon which the charge is based is of little importance. . . .'' (P. 92.)

Appellant's subsequent point that theoretically the court could have imposed a lesser sentence under section 524 than under section 664, and that the rendition of sentence under the latter provision therefore constitutes prejudicial error, fails in the absence of actual prejudice.

It is true that divergences in the two sections disclose a difference in punishment. Penal Code section 524 provides: ''Every person who *attempts*, by means of any threat, such as is specified in section 519 of this code, to extort money or other property from another is punishable by imprisonment in the county jail not longer than one year or in the state prison not exceeding five years, or by fine not exceeding five thousand dollars, or by both such fine and imprisonment.'' (Emphasis added.) The pertinent part of Penal Code section 664 reads: ''Any person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, *where no provision is made by law for the punishment of such attempts* as follows: 1. If the offense so attempted is punishable by imprisonment in the state prison

for five years, or more, or by imprisonment in a county jail, the person guilty of such attempt is punishable by imprisonment in the state prison, or in a county jail, as the case may be, for a term not exceeding one-half the longest term of imprisonment prescribed upon a conviction of the offense so attempted. . . ." (Emphasis added.)

Since Penal Code section 520 fixes punishment for extortion ". . . by imprisonment in the State prison for not less than one nor more than ten years," an attempted extortion under section 664 would carry imprisonment for not more than five years. On the other hand, punishment under section 524 could conceivably take the lighter form of a fine without imprisonment at all.

The theoretical prejudice to appellant fades into vacuity in the face of the actual sentence imposed. The court suspended sentence on Counts I and II (conspiracy to commit grand theft and forgery), admitted him to probation for five years on specified conditions, one of which was that he serve nine months in the county jail. On Count XIII the court ordered that sentence be suspended and "that the defendant be admitted to probation for five years on the same terms and conditions as set forth under Count I. Jail sentence, as a condition of probation, to run concurrently with Counts I and II." Appellant received no additional punishment for his conviction on Count XIII; he suffered no prejudice by the erroneous reference to Penal Code section 664.

2. *Appellants Reymenandt and Richards did not suffer prejudicial error by reason of the exclusion of the testimony regarding other sales.*

Appellants Richards and Reymenandt contend that the trial court erred in excluding testimony offered to prove appellants' lack of criminal intent and absence of a common scheme or plan to defraud or forge in that other sales occurred in which the prosecution did not charge wrongdoing. The court rejected appellants' offer of the testimony of one whom they dub a "happy customer." While we cannot accept respondent's arguments that the offered proof did not relate to the claimed conspiracy or that the decisions preclude its admission, we cannot believe that, assuming the admissibility of the testimony, its rejection caused prejudice to appellants.

Respondent's contentions that appellants sought only the admission of the testimony of the customer Wise, and that the Wise transaction fell outside the span of the conspiracy,

overlooks the whole of the offer of proof. It is true, as respondent argues, that the Wise purchase occurred in July 1956, and that the first charged overt act, in the form of the Martinez sale, occurred in October 1956. Respondent contends that the "transactions from which the convictions resulted occurred in February 1957, many months after the inception of the plan," and the "sales in February 1957 represented the peak month." But the Martinez matter took place only some three months after the Wise matter. In view of the extent of the time-span of the acts of the conspiracy, which respondent was permitted to show, ranging from October 1956 to May 1957, we do not think the testimony inadmissible upon the chronological hiatus alone.

The more telling answer to respondent's argument, however, lies in the offer of proof. It was not limited to the Wise transaction. Appellants stated, "We wish to introduce here transactions *during that same period of time* to rebut the implication that the prosecution seeks to create in this case, that there is an intent to defraud and to conspire. . . ." (Emphasis added.) Appellants' reference to the "period of time" surely refers to the time-span of the conspiracy.

Nor do the cases cited by respondent prove that the proposed testimony was inadmissible. Appellants' point is that the testimony would negate the alleged dishonest scheme or pattern by rending apart the pattern and by showing error and mistake instead of criminal intent. Hence *People* v. *Bond* (1910), 13 Cal.App. 175 [109 P. 150], in which a game warden, charged with the murder of an Indian during an arrest for illegal fishing, sought to show that he had murdered no one during other arrests, does not reach into the germane question of conspiracy. *People* v. *Reznick* (1946), 75 Cal.App.2d 832 [171 P.2d 952] fails upon the same ground. There, the defendant, charged with contributing to the delinquency of a minor in that he knowingly allowed a 14-year-old single girl to register in a hotel as the wife of a sailor, offered evidence showing "what he did on other occasions in registering persons at the hotel." (P. 836.) The court's rejection of evidence that defendant did not engage in other separate crimes does not mean the court would have rejected such evidence if the charge had been that defendant was engaged in a conspiracy so to register such minors. The same considerations apply to *Shaw* v. *United States* (8th Cir., 1924), 1 F.2d 199, which held that in meeting an indictment for false entries and embezzle-

ment as to a bank, defendant could not properly show he had not stolen any books from it.

On the other hand, the decisions cited by appellants do not apply to the present situation. In each of the cited cases, *People* v. *Sindici* (1921), 54 Cal.App. 193 [201 P. 975] ; *People* v. *Maciel* (1925), 71 Cal.App. 213 [234 P.2d 877] ; *Atkins Corp.* v. *Tourny* (1936), 6 Cal.2d 206 [57 P.2d 480] ; *Milana* v. *Credit Discount Co.* (1945), 27 Cal.2d 335 [163 P.2d 869, 165 A.L.R. 621] ; and *People* v. *Becker* (1934), 137 Cal.App. 349 [30 P.2d 562], the courts used broad language in advocating and supporting the admissibility of relevant circumstances, but in no case did any of the courts approve more than the introduction of circumstances surrounding the transaction involved in the case. None of the cases raised the issue regarding the admissibility of evidence of unrelated acts to prove lack of intent or the absence of a conspiratorial plan.

We have noted the case of *Hills* v. *United States* (9th Cir., 1938), 97 F.2d 710, which involved a prosecution for conspiracy to defraud the United States by agreement to sell gold to the mint by falsely concealing in the required affidavit the true origin of the gold and by defendant's signing fictitious names to the source slips for purchase of the gold. The appellate court held that evidence that this signature of other people's names constituted a recognized custom or practice should have been admitted to show the good faith of the accused. Appellants, here, however, cannot defend upon any saving practice or custom.

We need not pass upon the issue of the admissibility of the testimony of the satisfied buyer because we do not believe its exclusion could have caused prejudice to appellants. Evidence which had been admitted itself showed that the program covered a multitude of sales. During the whole of the program a total of 350 cars were sold; at its height, in February 1957, the firm transacted 109 sales. The jury necessarily knew that the prosecution did not charge appellants with wrongful conduct as to all of these transactions. The knowledge of the total number of sales in itself showed that some transactions had not been the subject of complaint. The details of transactions which spurred no action or attack could hardly have carried much weight in determining the guilt of appellants in those transactions which were attacked. The elaboration of details of sales, the number of which was already known to the jury, could not possibly have made the difference between guilt or innocence.

### 3. *The evidence sufficiently supported appellant Richard's conviction for forgery on Count XI.*

 Appellant Richards denies the sufficiency of the evidence to support his conviction on Count XI for forgery in a transaction involving the Turpens. We find, however, that the testimony of Mrs. Turpen and appellant himself provided the jury with an adequate basis for such conviction.

Mrs. Turpen stated that she and her husband signed a conditional sales contract in blank upon the understanding that the price of their new car was $4,953. She did not recall signing any other documents in blank. The Turpens did not authorize anyone to insert the amount of $6,221.60 as the purchase price. While admitting that he had witnessed or participated ''in the filling out and discussion of the sales purchase order'' in that transaction, appellant asserted the Turpens knew the actual price of the automobile. Appellant testified that before the Turpens signed the purchase order he had filled out most of it, ''down to the unpaid cash balance. . . .''

Even though Mrs. Turpen did not recall signing a sales purchase order in blank, the jury could properly find that the Turpens thought the car would cost $4,953 rather than $6,221.60 and that appellant had inserted the higher price without their knowledge or authorization. Substantial evidence thus supported the conviction for ''Forgery . . . in that . . . [appellant] did, with intent to defraud . . . [the Turpens] falsely make, alter, forge, counterfeit and alter a written contract.''

### 4. *The evidence sufficiently sustained appellant Winning's conviction on Count XII for forgery.*

 Although appellant Winning contends that the evidence did not support his conviction on Count XII for forgery in the Layne transaction his argument cannot stand.

Both Mr. and Mrs. Layne testified that Winning explained the referral program to them, that he told them the price of their new automobile, a Mercury, would be $2,900 plus accessories at cost; that they had signed documents in blank; that they selected the car after signing the documents; that appellant told them the interest charges would be one-half of one per cent per month on the balance owed; that they gave appellant two checks for $250 each as the down payment to be held until the Laynes gave notice that the checks would clear the bank; that they relied on appellant's statements as to the

price of the car, the trade-in on their automobile, and the hold-checks, and that, when they received the documents in the mail about one week later, insertions had been made in all the blank spaces. Mrs. Layne further stated that they did not authorize the insertion into the documents of "$4373.05" as the cash price of the car.

Appellant, of course, testified to an entirely different version of the facts, claiming that the Laynes signed a filled-out purchase order, that he did not tell them their new car would cost $2,900, and that he did not quote the interest charges as one-half of one per cent. The jury, however, could well have believed the testimony of the Laynes and inferred that appellant had completed parts of the documents without their authorization.

5. *The evidence sufficiently supported appellant Johnston's convictions under Counts VI (grand theft) and X (forgery).*

██ Appellant Johnston's contention that the evidence did not support his convictions for grand theft and forgery under Counts VI and X involving the Mason transaction cannot withstand the force of the testimony upon which the jury obviously relied.

Mason stated that Johnston told him that a new car would cost them " 'Approximately $3,200.00,' " that the trade-in value of his old car was $800 and that it would cover the down payment. Mason signed a sales contract, which did not indicate the purchase price, and likewise signed an automobile sales order, which contained some figures that he could not recall. The contract ultimately showed a purchase price of $4,331.50. Mason admitted he knew that the model which he bought ordinarily cost more than $3,200, but he thought that it was part of the deal. Johnston at no time told him of the higher price.

Johnston also persuaded Mason to sign a hold-check for $225, explaining, " ' 'It's just a hold check when you get started in the business. . . .' " When that check was presented to the bank for cash payment, Mason received notice that he did not have funds to cover it. To explain the attempted cashing of the hold-check, Johnston claimed the old car was worth only $500 and the $225 check was needed to complete the required down payment. He likewise asserted that Mason had signed a filled-in auto purchase order which listed the cash price as $4,331.50 and the trade-in as $500.

The jury could have believed the Mason testimony. In sub-

stance Mason signed a contract in blank upon the understanding that the balance due would be $2,400: the price of the new car of $3,200 less the $800 allowance for the old car. The completed contract as returned to him designated the price of the new car as $4,331.50. The price had been grossly increased, although the trade-in price had been decreased. Mason had not at any time been informed of the enhanced price of the new car. Led into this transaction by these false representations, he suffered damages in the loss of the new car, which was repossessed; he did not recover his old car or any money in its place.

The Mason testimony afforded substantial evidence for convictions for forgery and grand theft of Mason's old car.

6. *The court's instructions concerning larceny and larceny by trick and device were not erroneous; the evidence corroborated the charge of false pretenses.*

Johnston does not sustain two additional arguments: that (1) the court erred in its instructions concerning larceny and larceny by trick and device, and (2) the conviction on Count VI failed for lack of the necessary corroborating evidence. We have concluded, for the reasons we shall set out, that the court's instructions afforded a proper guide for the jury; the testimony of other persons, to whom appellant made similar statements, provided sufficient corroborative circumstances to uphold the conviction for theft by false pretense.

 Turning to the first point, we note that the court instructed on larceny and larceny by trick and device, as follows: ''In that form known as larceny, which is included in the charges of theft in Counts V, VI and VII of the Indictment, two elements are necessary: First, an intent to permanently deprive the owner of some certain property having any intrinsic value; and, second, a carrying away of the property; but in order to constitute a carrying-away, the property need not be retained in the possession of the thief; neither need it be removed from the premises of the owner. Any removal of the article from the place where it was kept by the owner, done with the intent I have described, and whereby the thief obtains possession and control of the property, at least for a fraction of time, is sufficient to constitute the element of carrying away.

''The variety of theft known as larceny by trick and device is committed when a person, by means of fraud, artifice, trick, device, or false promises, which he has no intention of per-

forming, obtains possession of property by another person with a felonious intent to steal it from such owner, and the owner of the property does not intend to transfer his title to the property to the person so obtaining its possession. If such owner parts with the possession of the property intending that it shall be used for or applied to a specific purpose, and the person receiving the property, at the time it is received, feloniously intends to convert it to his own use and steal it and not to apply the same to the use or purpose for which it was received, knowing that the owner parted with it only for such specific use or purpose, then the owner of the property, in legal contemplation, does not start [sic] with his title to the property. When property is thus unlawfully taken, the crime is that of larceny by trick and device.''

The first instruction, taken from California Jury Instructions Criminal, Number 221, merely sets forth the elements of larceny: intent to steal and asportation. The second instruction, California Jury Instructions Criminal, Number 223, does not become inapplicable merely because Mason intended to part with title to his old car. The instruction specifically covers the situation in which an owner means to pass title, intending that the property be used for a specific purpose. Here Mason intended to pass title to the 1952 Mercury as an $800 trade-in on a newer model.

▆▆▆ As to the corroborative evidence of the charge of false pretenses, Penal Code section 1110 provides in part: ''. . . the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances. . . .''

The cases hold that testimony of others who have had similar dealings with the defendant supplies the necessary corroboration. (*People* v. *Ashley* (1954), 42 Cal.2d 246, 268 [267 P.2d 271] ; *People* v. *Weitz* (1954), 42 Cal.2d 338, 347 [267 P.2d 295] ; *People* v. *Wallace* (1960), 182 Cal.App.2d 624, 627 [6 Cal.Rptr. 309] ; *People* v. *Frankfort* (1952), 114 Cal.App.2d 680, 692 [251 P.2d 401].) In *Weitz*, the court in sustaining the admission of testimony of various persons whose relations with the defendant were not described by the indictment, stated: ''Inasmuch as the evidence related to transactions similar in material elements to the ones forming

the basis of the indictment, it was admissible to show defendant's criminal intent and to corroborate the evidence of false pretenses.'' (P. 347.)

In the instant case other individuals who dealt with Johnston supplied corroborating evidence. Mr. Diedrich testified that Johnston had induced him to buy a car, saying its price was $3,200, and telling him that his 1955 Studebaker would suffice for the down payment, but subsequently Johnston demanded an additional $400. Another witness, Captain Ford, described similar statements by Johnston regarding price and trade-in values. The Matthews, who also dealt with Johnston, encountered similar difficulties. Thus other witnesses corroborated the testimony of Mason fulfilling the requirements of section 1110 of the Penal Code.

7. *The conspiracy counts against Winning and Johnston were supported by the evidence; the court did not err in its instructions concerning conspiracy.*

Appellants Winning and Johnston claim that the only evidence of conspiracy consists of testimony regarding acts and declarations of the alleged coconspirators and that therefore substantial evidence does not support the conviction. Their argument rests upon the provision of Code of Civil Procedure section 1870, subdivision 6, that ''After proof of a conspiracy,'' evidence may be given upon trial, of ''the act or declaration of a conspirator against his co-conspirator. . . .'' They say that '' 'The fact of conspiracy cannot be proved by evidence of extrajudicial declarations of a co-conspirator.' (11 Cal.Jur.2d p. 253.)'' Appellants' argument fails because the testimony of the victims relates not merely to what the coconspirators said but to what the victims themselves said and did. The only evidence of conspiracy did not consist of the acts or declarations of the conconspirators.

Appellants unsuccessfully contend the court gave conflicting instructions on conspiracy. The two instructions read: ''Each defendant in this case is individually entitled to, and must receive, your determination whether or not he was a member of the alleged conspiracy, if any existed, and as to each defendant you must determine whether or not he was a conspirator, as alleged, by deciding whether or not he wilfully, intentionally, and knowingly, joined with any other or others in an agreement or understanding having the elements of a criminal conspiracy as I have stated them to you.''

''In this case, except as to the counts on conspiracy, where

you must decide the innocence or guilt of the defendants jointly you must decide separately the question of the innocence or guilt of each of the several defendants."

The first instruction requires the jury to determine whether each defendant became a member of the conspiracy. The second directs the jury to decide the question of innocence or guilt of each defendant separately, except as to the conspiracy counts, which calls for a determination of joint innocence or guilt. The latter instruction does not overrule the former.

We affirm the judgments and the order denying a new trial.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied May 31, 1961, and the petition of appellants Reymenandt and Richards for a hearing by the Supreme Court was denied June 28, 1961.