[L. A. No. 19413. In Bank. Dec. 4, 1945.]

ROSE C. MILANA, Appellant, v. CREDIT DISCOUNT COMPANY et al., Respondents.

David Schwartz and Samuel Mirman for Appellant.

Earl E. Moss and C. V. Caldwell for Respondents.

SHENK, J.—The plaintiff appealed from a judgment of nonsuit in an action to establish that certain purported purchases by the defendants of accounts receivable were usurious loans, and to recover treble the amount of interest paid within one year prior to the commencement of the action. (Stats. 1919, p. lxxxiii, Const., art. XX, § 22.) Assuming the transactions to be loans the court appointed a referee to report on the amount of interest that had been paid. Upon the filing of the referee's report the trial continued. At the close of the plaintiff's case a motion for a nonsuit was granted on the ground that the plaintiff's evidence was not sufficient to entitle her to relief. The question is whether the court correctly ruled that there was no substantial evidence to support a finding for the plaintiff on the issue of usury if such a finding had been made. The parties do not dispute the referee's finding of the amount of interest paid, if the nature of the transactions be determined to be that of a loan. The question on appeal will therefore be treated as presenting only the issue of whether there was sufficient evidence to support a finding that the transactions were loans and not sales.

The following appeared from the plaintiff's evidence: The plaintiff manufactured women's embroidered blouses and neckwear, and embroidered cocktail glass covers. She sold the merchandise to department stores, college and other shops in cities in the United States, but she required funds to operate the business. The defendant copartners acquired knowledge of the plaintiff's need and responded to a call from her. She made them acquainted with her desire to borrow money on her accounts and with the necessity for immediate

funds to meet the payroll. They offered to render financial assistance. Accordingly they presented to her a so-called "sales agreement" dated May 22, 1940, prepared on a printed form, whereby defendants agreed to buy all acceptable current accounts and bills receivable in separate schedules at face value less customer's discount and less a further discount of two per cent. The plaintiff was to receive 85 per cent concurrently with the assignment of the accounts listed in each schedule, and the balance less discounts immediately after all of the accounts listed in the schedule were fully paid. The printed form contained the plaintiff's warranty that each debtor named in the schedule was solvent and would remain so until the maturity of the account. It also contained her unconditional guaranty that each and every account would be paid within sixty days after the date of the assignment. It was provided that the balance of the percentage reserved was to constitute security against accounts unpaid within the sixty-day period. In practice, accounts not paid within sixty days from assignment, although in some cases accounts were listed which were not yet due, were turned back to the plaintiff and were "repurchased" by the defendants under the same agreement, and an additional discount was taken on the so-called repurchases. The repurchase of accounts occurred in some instances in less than the sixty-day period. On September 5, 1941, a new "sales agreement" was entered into containing identical provisions with the exception that a two and one-half per cent instead of two per cent discount was charged by the defendants. The second agreement continued until the present action was filed in September, 1942.

Further provisions of the agreement required the plaintiff to give notice to her customers of the assignment of the accounts by stamping on the original and duplicate invoices the fact of assignment and a request to make checks payable to the defendants. So long as the plaintiff was not in default she could require the defendants to appoint one of her employees as their agent to report discrepancies in the accounts. The defendants had the option to terminate the agency upon suspension of the plaintiff's business on her request for a general extension of credit, on the filing of a petition in bankruptcy, on the assignment of assets for benefit of creditors, or on the appointment of a receiver or trustee in bankruptcy. In any such event the plaintiff agreed

to reimburse the defendants for costs and attorneys' fees incurred in the enforcement of collection of any of the accounts. The plaintiff warranted that such agent would at the close of each business day transmit to the defendants in their original form, all moneys, checks, etc., received by the plaintiff or the agent, together with a memorandum of the debtor's instructions for application thereof. It was also agreed that moneys, checks, etc., coming into the possession of the defendants would be applied "on any indebtedness" to them of the plaintiff "arising out of the assignment of accounts or contracts in dispute or otherwise," the agent to hold separately any money pending dispute.

In practice, costs including telephone, telegrams, postage expense and attorneys' fees, incurred by the defendants in the collection of any of the accounts were charged against the reserves. In practice also the defendants' discount was computed on the total value of the accounts before the customers' discounts were deducted, whether or not those discounts were taken by the customers and charged against the defendants' advances to the plaintiff. Other specific provisions need not be noted.

The statute (Stats. 1919, p. lxxxiii) and the Constitution (art. XX, § 22) limit the rate of interest upon the loan or forbearance of money to ten dollars on one hundred dollars for one year. (*French* v. *Mortgage Guarantee Co.*, 16 Cal.2d 26, 34 [104 P.2d 655, 130 A.L.R. 67].) Any person from whom a greater rate has been exacted may recover treble the amount of interest paid within one year preceding the commencement of an action brought for that purpose. (Stats. 1919, p. lxxxiii, § 2; *Westman* v. *Dye,* 214 Cal. 28 [4 P.2d 134].)

■ A sale is the transfer of the property in a thing for a price in money. The transfer of the property in the thing sold for a price is the essence of the transaction. The transfer is that of the general or absolute interest in property as distinguished from a special property interest. ■ A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form. (*In re Grand Union Co.*, 219 F. 353, 356 [135 C.C.A. 237];

*O. A. Graybeal Co.* v. *Cook,* 111 Cal.App. 518, 528 [295 P. 1088].)

In a sale the delivery of the absolute property in a thing and the receipt of a price therefor consummate the transaction. In a loan the initial transaction creates a debit and credit relationship which is not terminated until replacement of the sum borrowed with agreed interest.

In the present case the defendants made cash advances less discounts and in taking assignments of the accounts they exacted the plaintiff's guaranty of payment of their face value in full within sixty days. In practice they subjected defaulted accounts to payment from reserves, or return to the plaintiff and "repurchase" by the defendants under the same guaranties by the plaintiff. By the defendants' own testimony accounts not paid within the sixty-day limit were returned, and because the plaintiff was "hard pressed" for money and unable to meet the terms of her guaranties, she chose to "re-sell" them to the defendants at an additional two or two and one-half per cent discount for a further sixty-day period. In brief, the defendants by their contracts and practice secured themselves against loss and protected a return of two or two and one-half per cent for each sixty days or less during which their advances were in use by the plaintiff.

Contractors are free to buy and sell their property, and this may include promissory notes and other instruments, at a price agreed upon, and when the bona fides of the parties is established the percentage of profit has no relation to the usury law. (*Rose* v. *Wheeler,* 140 Cal.App. 217 [35 P.2d 220]; *Coast Finance Corp.* v. *Powers Furniture Co.,* 105 Ore. 339 [209 P. 614, 24 A.L.R. 855]; *General Motors Acceptance Corp.* v. *Mid-West Chevrolet Co.,* 66 F.2d 1.)

But lenders, intent on collecting compensation for the use of money in excess of the lawful rate, seek to avoid transacting their business in the form of loans. The courts have been alert to pierce the veil of any plan designed to evade the usury law and in doing so to disregard the form and consider the substance. (*Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609, 616 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; *Rosemead Co.* v. *Shipley Co.,* 207 Cal. 414 [278 P. 1038]; *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 P. 474]; *Smith* v. *Cavaglieri Mortgage Co.,* 111 Cal.App. 136 [295 P. 366]; *O. A. Graybeal Co.* v. *Cook, supra,* 111

Cal.App. 518, 529; *Wood* v. *Angeles Mesa Land Co.,* 120 Cal.App. 313 [7 P.2d 748]; *Chase & Baker Co.* v. *National Trust & Credit Co.,* 215 F. 633, 638; 27 R.C.L. p. 211 and cases cited in note.) The text of 27 Ruling Case Law, *supra,* states: ''No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forebearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings.'' ██ All of the negotiations, circumstances and conduct of the parties surrounding and connected with their contracts may be material in determining whether the form thereof covered an intent to violate the usury law, and the burden of establishing evasion must be met by evidence clearly showing the intent. (*Terry Trading Corp.* v. *Barsky, supra,* (210 Cal. 428, 432); *Van Noy* v. *Goldberg,* 98 Cal.App. 604 [277 P. 538], citing 27 R.C.L. p. 212, § 13.)

In other cases where the form of the transaction and the agreement of the parties were similar to those here involved, the courts have held the transaction to be not a sale, but a loan. (*Home Bond Co.* v. *McChesney,* 239 U.S. 568 [36 S.Ct. 170, 60 L.Ed. 444]; *In re Grand Union Co.,* 219 F. 353 [135 C.C.A. 237]; *Brierley* v. *Commercial Credit Co.,* 43 F.2d 724; *Mercantile Trust Co.* v. *Kastor,* 273 Ill. 332 [112 N.E. 988]; *Dorothy* v. *Commonwealth Commercial Co.,* 278 Ill. 629 [116 N.E. 143, L.R.A. 1917E 1110]; *Bundy* v. *Commercial Creit Co.,* 200 N.C. 511 [157 S.E. 860]; *Lloyd* v. *Keach,* 2 Conn. 175 [7 Am.Dec. 256]; *In re American Fibre Reed Co.,* 206 F. 309; *National Trust & Credit Co.,* v. *F. H. Orcutt & Son Co.,* 259 F. 830 [170 C.C.A. 630]; *Commercial Security Co.* v. *Holcombe,* 262 F. 657; *Petition of National Discount Co.,* 272 F. 570; *Le Sueur* v. *Manufacturers' Finance Co.,* 285 F. 490. Cf. *In re Eby,* 39 F.2d 76.) ██ From the evidence introduced by the plaintiff in the case at bar the trier of the facts could reasonably conclude that the contracts of the parties provided for a conditional transfer of title; that advances by the defendants were contemplated to be repaid within a specified time at a charge for the use of the money which was deducted in

advance; that the essence of the agreements was the use by the plaintiff of the funds at prescribed rates of interest which were in excess of the constitutional rate; that the transactions were not sales of accounts receivable but loans secured by assignments of the accounts at usurious rates of interest; that the intent to accomplish such a result was discernible from the contracts themselves; and that the negotiations and the conduct of the parties under the contracts further tended to dissipate any doubt arising from the employment of sales terminology. A finding on the plaintiff's case alone to the effect that the sale form was used merely as a cover for the real intent would find support from the written contracts, the conduct of the parties, and the surrounding circumstances.

The defendants attempt to distinguish the cases cited on the ground that there the seller of the accounts, rather than the buyer, collected and remitted the proceeds of the accounts to the buyer, and that no notice of the assignments was given to customers. But, as those cases disclose, the objection to the transaction is not overcome merely by changing the method of collection and by giving notice to customers. Those are not the only factors which constitute the transactions loans rather than sales. The significant fact is that if the defendants had really purchased the accounts and had taken absolute title there would be no occasion for the provision or practice relating to guaranties of payment within specified periods, or reversions of title and "repurchase" in the event of delayed payment by the customer. The factor considered determinative in *Brierley* v. *Commercial Credit Co., supra,* (43 F.2d 724, 727), was the actual substantial result that if the accounts were not paid at maturity the seller was bound to repay the advance with interest, although that charge was called by another name. So here the guaranties of the plaintiff in those respects may be held to amount to no more than a promise to repay the defendants the amounts loaned with interest at two or two and one-half per cent for each sixty-day or less period— a usurious rate. It was said in *Mercantile Trust Co.* v. *Kastor, supra,* (112 N.E. 988, 911), that to call the transaction a sale of accounts did not alter the fact that it was merely an advancement of money to be repaid with interest at a rate greater than allowed by law.

A motion for a nonsuit may not be granted where

there is evidence of sufficient substantiality to support a finding for the plaintiff, and in arriving at a conclusion on the question the evidence should be viewed most favorably to the plaintiff with every legitimate inference drawn in her favor and conflicts disregarded. (*Barnett* v. *La Mesa Post No. 282*, 15 Cal.2d 191 [99 P.2d 650], and cases there cited.) Since there is sufficient evidence in the present record to support such a finding, the trial court was in error in granting the defendants' motion.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.