[Civ. No. 22973. Second Dist., Div. Two. Aug. 20, 1958.]

REFINANCE CORPORATION (a Corporation), Respondent, v. NORTHERN LUMBER SALES, INC. (a Corporation) et al., Appellants.

74

Hy Schwartz for Appellants.

Sidney Fischgrund for Respondent.

ASHBURN, J.—Defendants appeal from a judgment for plaintiff for $54,025.77, growing out of a contract for the "factoring" by plaintiff of all accounts receivable of defendant Northern Lumber Sales, Inc. (hereinafter designated as Northern); performance of the obligations of this contract was guaranteed by the individual defendants, John M. Coughlan and Xerline Coughlan, his wife. Plaintiff sued upon the ground that certain receivables were sold and assigned to it, between June 3, 1955, and August 10, 1955, which were "false, fictitious and non-existent for the reason that said defendant Northern Lumber Sales, Inc., did not sell or deliver merchandise to the persons named in said bills of sale, and no accounts receivable were due, owing and payable as set forth in said bills of sale." The court found this allegation to be true, held that plaintiff had been damaged in the sum of $62,379.41, and, after adjusting the account between the parties, awarded judgment for the sum first mentioned herein.

Plaintiff Refinance Corporation (hereinafter designated as Refinance) was engaged in the factoring of accounts receivable in the sense of buying same for its own account from vendors of various commodities. Defendant Northern was engaged in the wholesale lumber business. Defendant John M. Coughlan owned the control of said corporation and was active manager of its business. On October 9, 1953, plaintiff and defendant Northern made a written agreement whereby plaintiff became "sole factor for all sales of your [Northern's] merchandise." (The words "you" and "your" designated Northern throughout the agreement.) It was agreed that Northern should assign to plaintiff all its "bona fide accounts

receivable'' and convey title to all merchandise therein mentioned that might be returned by Northern's customers. Plaintiff agreed to purchase, without recourse to Northern, all its accounts for merchandise sold ''provided that prior to the time of charging and delivery of merchandise to your customers, the account and terms of sale are approved by us in writing.'' Northern was required to deliver an assignment of each account, together with duplicate invoices, evidence of shipment and stamped addressed envelopes so that the original invoices could be mailed by plaintiff to the customers of Northern who were indebted respectively upon the assigned accounts. Each invoice was to bear an endorsement that it had been assigned and was payable to Refinance only. Northern represented and warranted ''that each account is based upon an actual unconditional sale and delivery of merchandise; and that the customer has made himself or itself absolutely liable for the payment of the amount stated in the invoice without reservations of any kind.'' On sales where credit of the customer was approved in advance by plaintiff, ''all purchases of your accounts by us are irrevocable and we will assume any loss by reason of the insolvency of the customer.'' Upon receipt of assignment of account plaintiff was to pay the full face of the invoice less the customer's discount shown thereon and a factoring charge of $1\frac{1}{4}$ per cent of the gross purchase price, i.e., 80 per cent thereof to be paid concurrently with assignment of account and the balance on the 5th and 20th days of the month after payment of said account. It was understood that at no time should the ''amount withheld'' or reserve be less than 20 per cent of the remaining entire balance of unpaid accounts. While the written contract primarily dealt with accounts which were to be purchased without recourse, it also by implication and practical construction covered other receivables which were purchased with recourse because the buyer's credit was not approved in advance by Refinance. During the period of October, 1953 to August, 1955, more than $2,000,000 of receivables were ''factored'' by plaintiff, of which sum $957,000 face amount were purchased with recourse. The agreement made no distinction between receivables purchased with and those purchased without recourse so far as the necessity of assignment of a bona fide receivable, accompanied by appropriate delivery proofs, was concerned. In addition to the factoring transactions, defendant Northern borrowed large sums of money from plaintiff aggregating about $174,000 and repre-

sented by promissory notes. These transactions appear to have been separate from the factoring activities.

There is no real challenge of the court's finding of the sale by defendant Northern to plaintiff of fictitious receivables. At a pretrial hearing it was stipulated: "That various accounts receivable for which the defendant, Northern Lumber Sales, Inc., executed assignments, and for which the plaintiff paid to the defendant, Northern Lumber Sales, Inc., various sums, for which [sic] non-existent, for the reason that the defendant, Northern Lumber Sales, Inc., did not sell or deliver merchandise to the persons named in said invoices and no accounts receivable were due, owing or payable as set forth in the said invoices." However, there was reserved as a contested issue: "The amount of the accounts receivable for which the defendant, Northern Lumber Sales, Inc., executed assignments and for which the plaintiff paid defendant, Northern Lumber Sales, Inc., various sums of money between June 3, 1955 and August 10, 1955, which were false, fictitious and nonexistent." That the amount found by the court, $62,379.41, is incorrect has not been established.

■ Although appellants assert insufficiency of the evidence in this and several other respects, they have not "demonstrated" that there is no substantial evidence to support the challenged findings as they are required to do in order to sustain that claim of error. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550]; *New* v. *New*, 148 Cal.App.2d 372, 383 [306 P.2d 987].) Appellants' mere summary of the evidence given by various witnesses, without argument as to the effect or specific application of the same, does not suffice for this purpose.

■ Counsel argues that one cannot sue upon a common count to recover under an express contract which remains executory in some of its aspects. Conceding that to be the general rule, it does not apply here. The amended complaint specifically pleads the contract, its breach through assigning to plaintiff fictitious receivables, and damage suffered therefrom. There is nothing in the nature of a common count at bar.

Next it is said that fraud must be proved by clear and convincing evidence, and that measure has not been filled at bar. The rule is one for governance of the trial judge, not a court of review (23 Cal.Jur.2d, § 83, p. 210). Moreover, this is not an action for fraud but one for breach of contract.

Northern is insolvent and appellants' efforts are directed chiefly to exoneration of the individual defendants, John M.

Coughlan and wife, who were held liable upon their written guaranty. As above shown, the factoring contract expressly warrants that each account assigned to plaintiff "is based upon an actual unconditional sale and delivery of merchandise." The guaranty agreement which the Coughlans signed incorporates the factoring contract by reference, recites that purchase of accounts by Refinance will be made "all at the request of the undersigned and upon the inducement of this waiver and guaranty and [Refinance] would not have executed said sales agreement and will not in the future buy said accounts except upon said request and inducement." The document guarantees "prompt and faithful performance of all and singular the covenants, promises, warranties, guaranties representations and stipulations made by the seller [Northern] in said sales agreement and/or to be made by it in said bills of sale."

Usury is asserted upon the theory that a usurious obligation is not enforceable against a guarantor. ▮ It is settled, however, that usury goes only to the matter of interest and does not preclude recovery of the principal by the lender either from the primary obligor (see *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 622 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; *Campbell* v. *Realty Title Co.*, 20 Cal.2d 195, 196 [124 P.2d 810]), or from the guarantor (see 91 C.J.S., § 132b, p. 727; 24 Am.Jur. § 43, p. 902). This is not an action for recovery of interest in any shape or form. It seeks recovery of moneys paid by plaintiff for fictitious receivables, plus the agreed factoring fee. However, defendant Northern seeks the recovery of interest alleged to have been paid in excess of the lawful rate.

Reliance upon *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335 [163 P.2d 869, 165 A.L.R. 621], indicates that appellants consider the amount paid for the receivables to have been a loan and the amount of the factoring charge to be interest upon a loan. The instant case is clearly distinguishable from Milana, however. That was an appeal from a nonsuit and the court held that the factoring contract there under consideration furnished, in the light of attendant evidence, substantial proof of a loan in the guise of a purchase of receivables. It did not hold that a contract for factoring or purchasing receivables is *per se* a loan or an usurious one. The contract in that case provided that each receivable be purchased at a two per cent discount additional to the customer's discount; it also contained a warranty that each debtor was solvent and would

remain so until maturity of the account; also guaranteed that each account would be paid within 60 days after date of assignment; the reserve account was to stand as security for payment of the assigned accounts. The court said: "In the present case the defendants made cash advances less discounts and in taking assignments of the accounts they exacted the plaintiff's guaranty of payment of their face value in full within sixty days. In practice they subjected defaulted accounts to payment from reserves, or return to the plaintiff and 'repurchase' by the defendants under the same guaranties by the plaintiff. By the defendants' own testimony accounts not paid within the sixty-day limit were returned, and because the plaintiff was 'hard pressed' for money and unable to meet the terms of her guaranties, she chose to 're-sell' them to the defendants at an additional two or two and one-half per cent discount for a further sixty-day period. In brief, the defendants by their contracts and practice secured themselves against loss and protected a return of two or two and one-half per cent for each sixty days or less during which their advances were in use by the plaintiff." (P. 340.) "Contractors are free to buy and sell their property, and this may include promissory notes and other instruments, at a price agreed upon, and when the bona fides of the parties is established the percentage of profit has no relation to the usury law." (P. 340.) "From the evidence introduced by the plaintiff in the case at bar the trier of the facts could reasonably conclude that the contracts of the parties provided for a conditional transfer of title; that advances by the defendants were contemplated to be repaid within a specified time at a charge for the use of the money which was deducted in advance; that the essence of the agreements was the use by the plaintiff of the funds at prescribed rates of interest which were in excess of the constitutional rate; that the transactions were not sales of accounts receivable but loans secured by assignments of the accounts at usurious rates of interest; that the intent to accomplish such a result was discernible from the contracts themselves; and that the negotiations and the conduct of the parties under the contracts further tended to dissipate any doubt arising from the employment of sales terminology. A finding on the plaintiff's case alone to the effect that the sale form was used merely as a cover for the real intent would find support from the written contracts, the conduct of the parties, and the surrounding circumstances." (P. 341.) "The significant fact is that if the defendants had really purchased the accounts

and had taken absolute title there would be no occasion for the provision or practice relating to guaranties of payment within specified periods, or reversions of title and 'repurchase' in the event of delayed payment by the customer." (P. 342.)

■ At bar there was a real purchase, not a loan, no guaranty of repayment of the purchase price, but on the contrary a purchase without recourse in cases where the customer's credit had been approved in advance by plaintiff; in other cases the seller, Northern, would take the account back upon default of the customer. The trial judge found that there was no usury, no receipt of usurious interest for the use and forbearance of money, and that the factoring agreement was not "a part of a plan and scheme to circumvent the usury laws of the State of California." It cannot be said that the evidence did not warrant the conclusion that the transactions in question were bona fide purchases and were not loans.

■ The record does not clearly show whether any part of the $62,379.41 (found to be plaintiff's damage) grew out of any purchases of receivables with recourse. Findings IV, VI and VII carry a contrary inference. But if it be conceded (as orally argued by appellants' counsel) that some part of said $62,379.41 derived from purchases made with recourse, it does not follow as matter of law that those transactions were loans or usurious ones. *Milana, supra,* does not so hold.

■ It is quite consistent with the rule stated in *O. A. Graybeal Co.* v. *Cook,* 111 Cal.App. 518, 531 [295 P. 1088], "that the giving of a guaranty is simply an item of testimony or evidence which the trial court may consider in determining whether the transaction is in fact a loan, or, what it purports to be, a purchase and sale of" a chose in action. Upon ample evidence the trial judge drew the inference of a bona fide sale in the case before us. ■ *Coast Finance Corp.* v. *Ira F. Powers Furniture Co.,* 105 Ore. 339 [209 P. 614, 615, 24 A.L.R. 855]: "When the holder of an instrument, such as the conditional sales contract held by defendant, transfers the instrument at a discount and is required to indorse or otherwise guarantee it so that the vendor becomes liable contingently to pay the purchaser at a future day a sum greater than that received with legal interest, the authorities present different views. The great weight of authority is that such a transaction should be regarded as a valid sale of a chattel with a warranty of soundness, and the purchaser is allowed to enforce the obligation to its full extent against his own indorser and all prior parties. 39 Cyc. 933."

That this represents the weight of authority appears from annotation in 165 A.L.R. at page 691; 91 C.J.S. § 19(3) page 595; 66 C. J. § 85, page 188, 55 Am.Jur. § 26, page 344; § 29, page 346.

Appellants claim that plaintiff and defendant John M. Coughlan entered into a joint venture for the purchase and operation of certain lumber mills and then diverted to that project funds which belonged to the reserve account, thus substantially increasing the burden of the guarantors to their exoneration. The court found, however, that this allegation was untrue, that there was no such joint venture, that there was no agreement whereby funds required for operation of a lumber mill were to be provided and furnished by plaintiff and that plaintiff never agreed to advance funds for use of a joint venture with defendant Coughlan. A reasonable construction of the evidence upon this issue is that William I. Stein, who was president and active manager of plaintiff corporation, made an individual deal with John M. Coughlan whereby he advanced to him personally certain moneys for purchase of a lumber mill or mills, with the understanding that Stein was to receive certain shares of the capital stock in one of those concerns, but the evidence does not compel a finding that this was a corporate venture of Refinance or that reserve funds pertaining to the factoring agreement were diverted to that personal deal of Stein's.

Alterations in the factoring agreement are claimed to have been made as a result of certain departures in manner of its performance, and it is argued that the guarantors were thereby released from their obligation. In certain instances plaintiff charged a factoring fee of $2\frac{1}{4}$ per cent, instead of the agreed $1\frac{1}{4}$ per cent, and the trial judge charged back to plaintiff $5,525.40 for this reason when arriving at the amount of the judgment. It was also found that certain customers had failed to take their cash discounts, which amounts had been deducted from the invoices and held by plaintiff when computing the purchase price of those receivables; that plaintiff should account to defendant for the same. The court accordingly charged an amount of $2,828.24 to plaintiff and deducted it from plaintiff's ascertained loss when fixing the amount of the judgment. It will be noted that these things were not done by agreement with Northern; they did not effect modifications of the contract and could not prejudice the guarantors whose liability was reduced by application to the amount

otherwise recoverable of those items charged by defendant in excess of what the contract permitted.

It is also said that plaintiff wrongfully charged to the reserve account an indebtedness of $50,000 owing by Northern and later wrongfully applied the balance of the reserve account, $37,703.65, to its out-of-pocket loss, which last mentioned entry occurred after this lawsuit was begun. But the contract expressly provides (as the trial judge pointed out at the trial) : ''We shall have the further and irrevocable right to offset any and all claims which we may have against you, arising from any cause, contract, agreement or promise whatsoever, against any moneys or other assets in our possession belonging or payable to you, and we shall have the further irrevocable right to deduct from and retain any such moneys or assets to repay us in full for any such claims against you.'' Thus it appears that these applications of funds worked no wrong upon the guarantors because they invaded none of their rights (*cf. S. W. Towle Lumber Co.* v. *Anderson,* 208 Cal. 371, 374 [281 P. 500]).

The court did not fail to find upon material issues as asserted by appellants. In this connection counsel specifies the matters of usury, alteration and modification of the principal contract, and claimed release of guarantors. All these matters are covered directly or indirectly by the findings as made. The argument is directed to the subject of appropriate conclusions. ''The judgment is the only real conclusion of law and displaces all former statements in the findings on the subject.'' (*Estate of Buckhantz,* 159 Cal.App.2d 635, 647 [324 P.2d 317] ; see also cases therein cited.)

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied September 17, 1958.