PASADENA INVESTMENT CO., a corporation, Plaintiff,

v.

PASADENA AIR PRODUCTS, INC., a corporation et al., Defendants.

Civ. No. 62-282-CC.

United States District Court
S. D. California,
Central Division.

May 15, 1964.

Craig, Weller & Laugharn, Los Angeles, Cal., for trustee William A. Wylie.

John J. Waller, Flint & MacKay, Los Angeles, Cal., for North American Aviation, Inc.

McLaughlin & McLaughlin, Los Angeles, Cal., for Pasadena Investment Co.

Jerome Weber, Beverly Hills, Cal., for Boys' Town.

Francis C. Whelan, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Los Angeles, Cal., for Robert A. Riddell.

Ward Waddell, Jr., Donald Bjelke, San Diego, Cal., for General Dynamics/Convair.

Bruce Stevens, in pro. per.

EAST, District Judge.

In these multiparty proceedings, the plaintiff Pasadena Investment Co., a corporation (PIC), named as original party defendants:

Pasadena Air Products, Inc., a corporation (PAP) and Bradford Industries, Inc., a corporation (Bradford), now each succeeded by William A. Wylie as Trustee in Bankruptcy (Trustee);

Bruce Stevens, an officer of PAP and Bradford (Stevens); North American Aviation, Inc., a corporation (American); General Dynamics/Convair (Convair); and

Robert A. Riddell, Director, Internal Revenue (Riddell).

American counterclaimed against PIC; and cross-complained against PIC, United States of America (Riddell), Trustee for PAP and Bradford, and several other cross-defendants not now within our scope of inquiry;

Convair cross-complained against PIC, Trustee for PAP and Bradford, and another cross-defendant not now within our scope of inquiry;

Riddell cross-complained against American; and

Trustee for Bradford and PAP cross-complained against Stevens; PIC; Pasadena Finance Co., a corporation (PFC); Lyle A. Adrianse (Adrianse), an officer of PIC and PFC; and Boys Town, U. S. A., a corporation (Boys Town).

Basically, the claims and counterclaims of the parties arise out of this situation:

PAP and Bradford held contracts with American and Convair to furnish and supply work and services in manufacturing or assembling vital aviation equipment, as from time to time authorized and requested by purchase order contracts, compensation to be payable when any given work or production under the purchase order contracts had been accepted and invoiced in due form by American and Convair, respectively. PIC was engaged in the business of "factoring" accounts receivable under the laws of the State of California.

On or about April 24, 1961, PIC and Bradford entered into a Factoring Agreement whereby PIC agreed to purchase from Bradford "all acceptable accounts receivable." Notice of this transaction was recorded pursuant to California law on April 24, 1961. Under this Agreement, PIC, for adequate value, purchased certain unpaid invoices issued to Bradford by Convair in the aggregate amount of $9,943.05, and by American in the aggregate amount of $14,234.87.

On or about November 16, 1961, PIC entered into a similar agreement with PAP, which was likewise recorded on November 16, 1961, and under which PIC purchased certain unpaid invoices issued to PAP by American in an aggregate amount in excess of $73,000.00.

Each of these accounts-receivable Factoring Agreements contained basically the same terms and phraseology, which, in effect, gave PIC an option to purchase any accounts receivable which it elected to purchase and the power to refuse to purchase any accounts which it found unacceptable.

On December 6, 1961, Riddell, under a valid federal tax lien, levied upon and took possession of all the machinery and equipment owned by Bradford, and on December 9, 1961, Riddell entered an assessment against PAP for third-quarter 1961 withholding and FICA federal taxes in the aggregate of $34,431.99.

PIC was aware that the American purchase order contracts contained a nonassignable provision (as will be later discussed), and, by arrangement with PAP, PIC permitted remittances from American upon invoices to PAP (factored to PIC) to be paid directly to PAP; however, PIC exercised a type of internal control with PAP which channeled American's remittances directly to PIC. Notwithstanding this form of control, and during the period of December 12, 1961, to December 21, 1961, American remitted to PAP $72,994.93 in payment of invoices to PAP (theretofore factored to PIC) which escaped PIC's control and did not reach PIC. The evidence is clear that American was advised of PAP's factoring of its invoices to PIC, and, furthermore, PIC had requested American's consent thereto; however, American had at all times refused to recognize or honor the interest of PIC under the factoring arrangement, relying on a nonassignability clause included in all of the purchase order contracts.[1]

On December 14, 1961, Stevens, as the President of PAP, had acquired a cash-

---

1. "SUBCONTRACTING AND ASSIGNMENT—This order may not be subcontracted in whole nor assigned, nor may any assignment of any money due or to become due be made by Seller without, in each case, the prior written consent of Buyer (North American)."

ier's check in the amount of $18,807.66 from the proceeds of remittances from American on factored invoices which had escaped PIC's control, and on this date Riddell's collection agent caused the cashier's check to be appropriately endorsed by Stevens and applied the proceeds thereof to the purchase of certificates for the payment of the fourth quarter 1961 withholding and FICA taxes owed by PAP to the government, which quarterly payment of taxes was not then assessed as delinquent.

On December 15, 1961, Riddell filed his notice of a tax lien arising on his assessment of delinquent taxes against PAP.

On January 5, 1962, American owed PAP $51,160.72 on issued invoices, a number of which, aggregating $10,-801.36, had been factored to PIC, and on this date Riddell levied his tax lien upon the entire indebtedness. Thereupon, American refused to honor the levy by reason of the asserted factoring of the invoices aggregating the sum of $10,-801.36, and the claims of PIC for payment of the amount of $72,994.93 there-tofore paid PAP, and now holds the entire sum of $51,160.72, with claims of offset against Riddell, all subject to order herein.

American and Convair have each deposited their indebtedness to Bradford, in the amounts of $14,234.87 and $9,-943.05, respectively, with the registry of this Court.

On January 22, 1962, involuntary bankruptcy proceedings were instituted against both Bradford and PAP, and on April 5, 1962, Trustee was appointed for each.

On March 20, 1962, Riddell sold all of the tangible properties of Bradford and accounts receivable due Bradford from American and Convair, at a tax sale upon his above-mentioned levy, to Adrianse, who in turn assigned all of his right, title and interest therein to PIC.

Out of these transactions and the pretrial orders and stipulations entered herein, the parties' demands are delineated as follows:

PIC SEEKS TO RECOVER FROM:

| | Defendant | Amount | Rate of Interest |
|---|---|---|---|
| (1) | Riddell (proceeds of the cashier's check aforesaid) | $18,807.66 | 5% from 12–14–61 |
| (2) | American (less whatever sum it recovers from Riddell) | 72,994.93 | 7% from 12–22–61 |
| (3) | American (on invoices factored, and being a part of $51,160.72 levied upon by Riddell) | 10,801.36 | 7% from 12–22–61 |
| (4) | American (amount of invoices factored by Bradford and tendered into registry) | 14,234.87 | |
| (5) | Convair (amount of invoices factored by Bradford and tendered into registry) | 9,943.05 | 7% from 12–22–61 |

———◆———

RIDDELL seeks to recover from American the amount of $34,431.99 of the sum of $51,160.72 due on invoices to PAP (of which $10,801.36 has been factored), now held by American.

TRUSTEE for Bradford seeks to recover the amounts of $14,234.87 and $9,-943.05 owed by American and Convair, respectively, tendered into registry.

TRUSTEE for Bradford and PAP seeks to recover from Stevens, Adrianse, PIC, PFC, and Boys Town all moneys and properties received by these parties, respectively, from either Bradford or PAP within four months from date of adjudication of bankruptcy as alleged voidable preferences.

Dealing now with the claims of the respective parties in the above order:

### PIC'S CLAIM AGAINST RIDDELL, Item 1

█ It appears that following the execution of the factoring agreement between PIC and PAP, the parties made use of a complicated "rebate account," and Riddell contends that this modus operandi reduced and branded the factoring agreement as (a) an agreement by PIC to loan moneys to PAP upon the security of American and Convair invoices rather than (b) a purchase for value by PIC. I find from the evidence that this "rebate account" was simply a bookkeeping facility to show the status of the money account between PIC and PAP. It is uncontroverted that to this account PIC entered as credit charges (PIC's account payable) the amounts payable (a) loan upon, or (b) purchase price for, respectively, invoices of American and Convair immediately upon ascertainment of the face value and factoring of an invoice. Subsequent credit charges were entered as further percentages became payable as hereinafter pointed out. Then, as funds were actually paid from time to time upon demand by Stevens for PAP or Bradford operating capital and expenses, or as PAP or Bradford may have become chargeable for other items in connection with the factoring agreement, debit charges were entered to the "rebate account." This arrangement was merely a bookkeeping account which at all times showed funds actually paid to PAP and Bradford upon purchase prices, which did not always coincide with dates and amounts of actual purchase of the invoices. The important thing is that always the "rebate account" revealed immediately upon a purchase of an invoice an entered account payable to PAP and Bradford for the full consideration of the (b) "purchase price" as it became payable upon the invoice. Many times this account was overdrawn in favor of PAP and Bradford, although the officers of PIC endeavored to withhold overpayment of purchase prices. It is important to note that Stevens, who had in the first instance requested this arrangement by written direction to PIC, objected, and incessantly complained to the officers of PIC and to Riddell's collecting agent to the effect that PIC took all the proceeds from the invoices and would not give him enough operating funds. Suffice to say, this bookkeeping arrangement and system did not vitiate the wording of the intent and warranties of the factoring agreements so as to render them "(a) loans" upon the invoices as security.

I conclude that the factoring by PIC of PAP and Bradford's invoices was a "purchase" for value of the invoices as protected by § 6323(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. 6323 (1963). Advance Industrial Finance Co. v. Western Equities, Inc., 173 Cal.App.2d 420, 343 P.2d 408 (1959); Refinance Corp. v. Northern Lumber Sales, Inc., 163 Cal.App.2d 73, 329 P.2d 109 (1958); Bass v. Aetna Factors Co., 272 F.2d 707 (9th Cir. 1959); Milana v. Credit Discount Co., 27 Cal.2d 335, 163 P.2d 869, 165 A.L.R. 621 (1945).

█ I find from the evidence that Riddell's collecting agent did not obtain possession of the cashier's check and its proceeds under or by virtue of the Director's levy of December 9, 1961, or, for that matter, under any lawful levy or process, but, on the contrary, the proceeds of the cashier's check were voluntarily turned over by Stevens to, and knowingly received by, Riddell's collecting agent for application upon a several and distinct tax account owed by PAP. Further, that Riddell's collecting agent had actual knowledge, as related to him by Stevens, that the cashier's check represented payments received by PAP from American in payment of invoices then factored and sold to PIC. It follows that in view of

this finding it is not necessary to determine the relative priorities of PIC under its recorded notice of the factoring agreements with PAP on November 16, 1961, and of Riddell under his notice of tax lien filed on December 15, 1961.

Finally, I conclude under the rule announced in 49 Cal.Jur.2d, Trusts, p. 321, § 468 (1959), and the teachings of Stuart v. Chinese Chamber of Commerce of Phoenix, 168 F.2d 709 (9th Cir. 1948), and Kirkendall v. United States, 31 F. Supp. 766 (Ct.Cl.1940), that PIC is entitled to recover this item of $18,807.66, with interest, from Riddell (United States—Tucker Act).

## PIC'S CLAIM AGAINST AMERICAN, Item 2

▆▆▆ As noted above, American's purchase orders to PAP contained provisions of nonassignability of moneys due or to become due thereunder. While PIC had requested American to approve the factoring agreements and the purchases thereunder, such approval and consent was not forthcoming from American, and PIC had effectuated the internal control within PAP to channel American remittances to the hands of PIC. I am satisfied that such provisions of nonvoluntary assignment of moneys due or to become due under the terms of contracts are reasonable demands and restrictions for a debtor to make and are not contrary to public policy. Further, that the language of the provisions of nonvoluntary assignment as here involved are appropriate and clear. I conclude that the agreement not to assign moneys due or to become due under the purchase orders are valid, effectual, and American had all lawful right to enforce the provisions. PIC, having had knowledge of the provisions; having asked consent and knowing it was withheld, further dealt with PAP at its own risk; at least, as here, not to the jeopardy of American. Parkinson v. Caldwell, 126 Cal.App.2d 548, 272 P.2d 934 (1954).

PIC urges that St. Paul Fire & Marine Ins. Co. v. Barnes Construction Co., Cal. App., 26 Cal. 646 (1962), 59 Cal.2d 691, and 31 Cal.Rptr. 52, 381 P.2d 932 (1963) outmodes Parkinson, supra. I feel not, because the language of the nonvoluntary assignment provisions there provides:

"[T]hat the Sub-contractor shall not sublet, assign or transfer this contract, or any part hereof, without the written consent of the Contractor." (31 Cal.Rptr. 54, 381 P.2d 934.)

While it is true that St. Paul held that the wording of this provision did not prohibit the assignment of moneys due under the contract, it did so upon this reasoning:

"It is true that if a contract does contain a provision which prohibits assignment, the performance provisions of the contract are not then assignable without the written consent of the other contracting party. This does not mean, however, that the contract proceeds * * * may not be freely assigned. * * * 'It is established that a provision in a contract or a rule of law against assignment does not preclude the assignment of moneys due or to become due under the contract * * *.'" Citing Trubovitch v. Riverbank Canning Co., 30 Cal.2d 335, 182 P.2d 182, 185 (26 Cal.Rptr. 647, 648).

St. Paul applies a well-known rule of construction favoring free alienability of property. Where a contract clause restricting assignability of the contract is silent as to the assignability of the money to become due under the contract, then this rule of construction is properly used to interpret the intent of the parties; however, in our case the contract expressly restricts the assignment of moneys due. American's and PAP's intent is too clearly spelled out to allow indulgence in rules of construction.

I conclude that American held all lawful right to withhold its consent to the factoring and sales of PAP's invoices to PIC and to disregard the same and to look solely to PAP for good and sufficient receipt; accordingly, PIC cannot recover this item of $72,994.93 or any part there-

of which American rightfully and in good faith paid to its creditor PAP.

## PIC'S CLAIM AGAINST AMERICAN, Item 3

For the reasons and under the authorities referred to above in concluding that PIC is entitled to prevail upon its claim against Riddell (Item 1), I likewise conclude that PIC is entitled to recover from American the amount of $10,801.36, with interest thereon. Further, should American insist upon the receipt of the trustee of PAP, in that event any part of said sum of $10,801.36 and interest so paid to the trustee shall be deemed trust funds of PIC in the hands of such trustee and immediatey recoverable by PIC. The balance of the amount of $51,160.72 is payable first to the satisfaction of the tax lien levy of Riddell and the overplus, if any, to the trustee for PAP.

## PIC'S CLAIM AGAINST AMERICAN'S AND CONVAIR'S DEPOSITS IN COURT, RESPECTIVELY, Items 4 and 5

Trustee for Bradford claims the status of an ideal creditor of Bradford under the provisions of § 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c (1963), and, as such, entitled to the said items of $14,324.87 and $9,943.05, each being payments by American and Convair, respectively, upon invoices factored and sold to PIC by Bradford. However, Advance Industrial, Refinance Corp., and Bass, supra, present hurdles that the trustee cannot jump, and I conclude that since PIC has recorded its factoring agreements as provided by California law prior to adjudication and is a purchaser for a valuable consideration, it is entitled to recover these deposited items of $14,234.87 and $9,943.05.

## CLAIMS OF TRUSTEE FOR PAP AND BRADFORD AGAINST PIC, PFC, AND ADRIANSE FOR VOIDABLE PREFERENCES

As will be later developed, here also the trustee is faced with purchases for value of the invoices from PAP and Bradford by PIC.

It appears from the evidence that the value paid by PIC through the "rebate account" in the first instance and immediately upon factoring, was 75% of the face value of the invoice, with further percentages payable to PAP and Bradford, respectively, depending upon timely payment of the invoices, with a net gain of approximately 3% to PIC, representing a reasonable and lawful profit for its risk of purchase. Section 60, sub. a of the Bankruptcy Act describes the elements of a "preference" as follows:

(1) making or suffering a transfer of his property,

(2) to or for the benefit of a creditor,

(3) for or on account of an antecedent debt (resulting in a depletion of the estate),

(4) while insolvent, and

(5) within four months of bankruptcy,

(6) the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class.

Further, that such a preference may be avoided only if the transferee " * * * had reasonable cause to believe that the debtor was insolvent. The burden of proof of the existence of all these essential elements is upon the trustee." Collier Bankruptcy Manual 2d, ¶ 60.01, p. 619. Even though PIC had the right to refuse to purchase any given invoice under the factoring agreement, nevertheless, the agreement on the part of PAP to factor and sell all invoices was sufficient to create mutuality under the contract to the extent that any overdrawn amounts appearing as debit items on the "rebate account" did not constitute a several and distinct "antecedent debt" on a several and distinct contract other than the factoring agreement. Therefore, PIC, being the debtor, could apply such amount of overdrafts as advancements upon future purchases under the continuing mutual factoring agreement. Therefore, any overdrawn amounts in the "rebate account" would not constitute an "antecedent debt" within the meaning of

§ 60, sub. a, supra, and would be a part of the consideration or purchase price paid for an invoice so factored. I conclude that PIC paid "fair present consideration" for each invoice purchased under the factoring agreements with PAP and Bradford and the necessary element [(3) above] of a preference is wanting. In re Nizolek Furniture & Carpet Co., 71 F. Supp. 1012 (D.N.J.1947); In re Pusey, Maynes, Breish Co., 122 F.2d 606, 608–609 (3rd Cir. 1941); 3 Collier on Bankruptcy, § 60.19, p. 824–5; Collier Bankruptcy Manual, § 60, p. 662. Moreover, the evidence fails to establish that PIC "had reasonable cause to believe that" either PAP or Bradford were insolvent at the time of the factoring.

I conclude that the trustee for PAP and Bradford cannot recover from either PIC, PFC or Adrianse for any moneys or properties received by either of them from either PAP or Bradford or their accounts, respectively.

### TRUSTEE'S CLAIMS FOR PAP AND BRADFORD AGAINST STEVENS AND BOYS TOWN

I find from the evidence that the trustee has failed to establish that either Stevens or Boys Town has received any properties, assets or funds of either PAP or Bradford which have not been fully utilized for the use and benefit of PAP and Bradford, respectively. Accordingly, I conclude that the trustee for either PAP or Bradford cannot recover herein against Stevens or Boys Town on account of any voidable preference.

Accordingly, each of the cross-actions of the trustee for PAP and Bradford against Stevens, Adrianse, PIC, PFC and Boys Town should be dismissed;

American's counterclaim against PIC and American's cross-complaint against PIC, United States of America, Riddell, State of California, Baron & Chestney Collection Bureau, Raymond Mitchell, and the trustee for PAP and Bradford, should be dismissed;

PIC should have judgment against Riddell for Item 1, against American for Item 3 and Item 4, and against Convair for Item 5 (to the extent of the tenders herein by American and Convair on Items 4 and 5, respectively), and against PAP for the sum of $72,994.93 paid by American on invoices factored to PIC, less the amount recovered by PIC from Riddell;

PIC's cause against Bradford and Stevens should be dismissed;

United States of America should have judgment against American for tax levy in the amount of $34,431.99; and

Convair's cross-complaint against PIC and Trustee for PAP and Bradford should be dismissed.

It seems that as of now, and under the present issues and equities, no party hereto should recover costs incurred herein prior to this date.

Counsel for PIC is requested to prepare, serve, and submit proposed findings of fact, conclusions of law and judgments in conformity with this memorandum decision, and in the event all parties cannot agree as to form of such proposals, then this Court will, upon the request of any party, set the proposals for settlement by the Court.