STONE, J.
 

 Defendants appeal from an order denying their motion to dissolve a writ of attachment. By agreement dated March 15, 1965, defendant AMA Corporation, doing business as Bella Vista Community Hospital, agreed to sell its accounts receivable to plaintiff, Investors Thrift, an industrial loan company located in Fresno. The individual defendants, Herman Kaye and Dolores Kaye, guaranteed AMA’s faithful performance of the contract.
 

 In less than five months after execution of the contract, August 5, 1965, plaintiff filed a complaint alleging a number of reasons for. terminating the contract. Plaintiff obtained and caused to be levied a writ of attachment, which defendants moved to dissolve. The trial court denied the motion. Defendants then moved to vacate the order, and renewed their motion to dissolve the attachment. These motions were
 
 *203
 
 heard by a different judge, who denied both of them. This appeal followed.
 

 Appellants argue, first, that the transaction was a loan, not a sale, and,
 
 a fortiori,
 
 the assignment of accounts constituted security for the loan.
 

 The contract is couched in terms of a sale of accounts, yet certain provisions, as appellants point out, are consistent with an agreement for a loan as well as for a sale. One such provision required appellant seller to guarantee payment of so-called insolvent accounts assigned to respondent buyer even though the buyer continued to hold them for collection. We do not think this provision of the agreement is controlling. No financing agency can be expected to either buy accounts or to make a loan upon an assignment of accounts without protecting itself against valueless accounts by a guarantee of this character. In any event, it is not the guarantee, or promise to reimburse, that constitutes “security,” but the assigned account that is held. From its very designation, an insolvent account is not “security” in the sense the term is used in the attachment statutes.
 

 The same reasoning applies to disputed accounts which the seller agreed to buy back from respondent. A disputed account that depends for its validity upon the outcome of a lawsuit is not a liquidated account. Hence a disputed account is not security Avithin the rationale of Code of Civil Procedure section 537.
 

 Appellants’ argument that the agreement, vieAved in its entirety, must be -considered a loan, rather than a sale of accounts, is grounded almost entirely upon the case of
 
 Milana
 
 v.
 
 Credit Discount Co.,
 
 27 Cal.2d 335 [163 P.2d 869, 165 A.L.R. 621], In
 
 Milana
 
 the plaintiff sold to the defendant her accounts receivable for embroidered articles previously sold and delivered to her customers. The two agreements are dissimilar, however, in that in
 
 Milana
 
 the seller Avas required to guarantee that every account would be paid Avithin 60 days, and if not so paid to “repurchase” them. She was permitted to immediately resell the same unpaid accounts to the defendant by paying charges in the same amount as paid upon the original sale 60 days earlier. The Supreme Court held that the agreement was, in effect, a 60-day loan, and said: “The courts have been alert to pierce the veil of any plan designed to evade the usury law and in doing so to disregard the form and consider the substance.” (P. 340.)
 

 
 *204
 
 Appellants ask us to pierce the veil and find the agreement before the court to be, in substance, a loan and not a sale. But there is no “term purchase” in the contract we are construing; appellants were not required to “repurchase” any accounts unpaid after 60 days, or if unpaid for any other period.
 

 In
 
 Advance Industrial Finance Co.
 
 v.
 
 Western Equities, Inc.,
 
 173 Cal.App.2d 420 [343 P.2d 408], and in
 
 Refinance Corp.
 
 v.
 
 Northern Lumber Sales, Inc.,
 
 163 Cal.App.2d 73 [329 P.2d 109], the court was called upon to interpret a contract corresponding to the one before us. In each case the seller relied upon
 
 Milana,
 
 and in each ease the court held there was a sale and pointed out the distinction between a sale and resale of accounts after a given period, as in
 
 Milana,
 
 and an outright sale. Also, the contracts in
 
 Advance Industrial Finance Co.
 
 and
 
 Refinance Corp.
 
 each contained a clause whereby the seller guaranteed the buyer against losses arising from the assignment of bad accounts, that is, disputed accounts or insolvent debtor accounts, quite similar to the provisions in the contract before us. Yet in each case the court held that a guarantee of the validity of accounts implemented by an agreement to repurchase “uncollectible or disputed accounts” did not, per se, render the transaction a loan.
 

 We turn to appellants’ contention that, granted the agreement was a contract of sale and not a loan at the time respondent obtained and levied its writ of attachment, respondent held personal property as security for at least part of the debt sued upon. Section 537 provides that a plaintiff may not obtain and levy a writ of attachment where the debt sued upon is secured by “any pledge of personal property. ’ ’
 

 The argument is based upon provisions of the contract of sale that permit respondent buyer to establish a reserve account. The agreement provided that ‘1 Investors shall have the right to withhold any account, moneys or property of the Seller that may come into possession or control of Investors as payment toward and security for any indebtedness under this agreement or for any other obligations of Seller to Investors. ”
 

 This right to withhold any account, money or property as security for any indebtedness under the agreement was given further articulation by the following paragraph: “3. Reserve : Investors shall, with reference to all accounts
 
 *205
 
 assigned and sold to it hereunder, prepare and furnish to Seller each month a statement concerning the reserve account of Seller, which statement shall reflect all credits and debits thereto during said month. In order to protect Investors against any credits, allowances, offsets or disputes, it may withhold any amount of funds which, in its opinion, is reasonably necessary to cover such contingencies and will remit to Seller any excess reserve from time to time. A debtor and creditor relationship shall exist as to such reserves. ’ ’
 

 We believe the trial judge properly analyzed this question and that his determination of this issue is correct. In his order denying appellants’ motion to dissolve the attachment, Judge Goldstein wrote: “. ... the complaint nowhere alleges an election on the part of the plaintiff to hold said accounts as security or for a deficiency judgment upon the exercise by the plaintiff of its right to sell said accounts for the purpose of satisfying the indebtedness from the defendants to the plaintiff. On the contrary, the complaint affirmatively alleges that the defendants have failed to repurchase said accounts from the plaintiff, which would clearly suggest that it is holding said accounts subject to the right of repurchase upon payment of the sum due to the plaintiff and not as security for the payment of said sum. What we have, in effect, is an agreement by the defendants to purchase certain property from the plaintiff which the plaintiff must hold for the account of the defendants.
 

 “Under such conditions, the Court may not regard the accounts as security for the payment of an indebtedness due from the defendants to the plaintiff. This view is fortified by the affidavit filed by the plaintiff at the time of the issuance of the attachment. In that affidavit, the plaintiff states that the payment of the contract is not secured by any lien upon personal property or any pledge of personal property.
 

 “The Court does find that an account receivable, being a chose in action, is personal property (Sec. 14, Code of Civil Procedure). It has frequently been held in this state that a chose in action, even for a tort liability, is personal property as defined in the Civil Code,
 
 Haro
 
 v.
 
 Southern Pacific Railroad Company,
 
 17 Cal.App.2d 594 [62 P.2d 441]. However, the mere fact that an account receivable is personal property does not mean that the particular accounts receivable in this case are being held as security for the sums due from the defendants to the plaintiff.
 

 “There is an additional reason why plaintiff is entitled to
 
 *206
 
 an attachment in this case. This arises from the indemnity-provisions of the agreement. In this respect, the agreement provides:
 

 ‘
 
 ‘ ‘
 
 Indemnity : In the event Investors terminates this agreement with Seller, Seller agrees to furnish Investors indemnity-satisfactory to Investors against any items which are chargeable to Seller under the terms of this agreement or pursuant to any other obligation of Seller to Investors. ’ (Paragraph 2-1 of Agreement.)
 

 “The complaint alleges that the plaintiff terminated the agreement, gave notice thereof and demanded the repurchase of the accounts. It further alleges that the plaintiff made written demand upon the defendants for all sums due and owing, to the plaintiff. This, of necessity, includes the right to indemnity satisfactory to the plaintiff.
 

 “It was held in
 
 General Insurance Company
 
 v.
 
 Howard Hampton, Inc.,
 
 185 Cal.App.2d 426 [8 Cal.Rptr. 353], that where an agreement provided for the deposit with the plaintiff of indemnity, and where the defendants failed to deposit such indemnity, the plaintiff, upon filing an action for the deposit of such indemnity, was entitled to a writ of attachment. This was held to be true even though the plaintiff had the unilateral right to determine the amount of indemnity which would protect it. Here, the agreement contains a similar provision. ’ ’
 

 The order is affirmed.
 

 Conley, P. J., and Gargano, J., concurred.