[Civ. No. 49114. Second Dist., Div. Four. Dec. 14, 1976.]

SEYMOUR LENES et al., Plaintiffs and Appellants, v.
FRANK ROY DEAN et al., Defendants and Respondents.

COUNSEL

Kelly & Graham and Phillip Kelly for Plaintiffs and Appellants.

Smith & Hilbig, Keith K. Hilbig and Milan D. Smith, Jr., for Defendants and Respondents.

OPINION

**KINGSLEY, Acting P. J.**—Plaintiffs appeal from an order dismissing their second amended complaint (hereinafter complaint) after an order sustaining a demurrer without leave to amend that complaint. For the reasons set forth, we affirm the order.

The complaint alleges, so far as is here pertinent, as follows:

### "XIII

"On or about August 31, 1973, plaintiffs and defendants entered into a written agreement wherein plaintiffs were to purchase and defendants were to sell, all those certain assets of a men's clothing store known as Big & Tall Men's Fashions, Inc. A copy of said agreement is attached hereto, marked Exhibit 'A' and incorporated herein.

### "XIV

"As part of the consideration for the transfer of said assets from defendants to plaintiffs, plaintiffs executed a purported note in favor of defendants in the principal amount of $227,513.00. A copy of said purported note is attached hereto marked Exhibit 'B' and incorporated herein.

### "XV

"Under the provisions of said note, plaintiffs were to pay monthly installments of $1,896.00 on principal plus interest at the rate of twenty (20%) per cent per annum."

The complaint then alleges payments (including interest at the 20 percent rate) and seeks recovery (by credit on the principal) of those payments with treble damages.

From the record it appears that defendants were, and are, duly licensed as personal property brokers under the provisions of the Personal Property Brokers Law.[1] The ruling on the demurrer necessarily took into account that fact appearing in plaintiffs' complaint. We consider the issues raised in this appeal from the same standpoint.

I

In spite of plaintiffs' attempt to characterize the transaction as a "loan" within the meaning of article XX, section 22, of the California Constitution, it was, as plaintiffs' complaint shows, a sale and not a loan. The distinction between the two kinds of transaction was described by the Supreme Court in *Milana* v. *Credit Discount Co.* (1945) 27 Cal.2d 335, at page 339 [163 P.2d 869, 165 A.L.R. 621], as follows: "A sale is the transfer of the property in a thing for a price in money. The transfer of the property in the thing sold for a price is the essence of the transaction. The transfer is that of the general or absolute interest in property as distinguished from a special property interest. A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use."

That language is here appropriate. Defendants owned a men's clothing store; they sold it to plaintiffs for a total price of $333,885 plus 50 percent of the net profits of the business for four months. Part of the purchase price was paid in cash, part was paid by the assumption of certain unpaid obligations of the business, and part by the promissory note herein involved.[2] Nothing in the complaint indicates that the

---

[1]Sections 22000 through 22010 of the Financial Code.

[2]We set forth the terms of sale:

"B. Consideration. The total consideration (the 'Purchase Price') to be paid to Seller by Buyer for the Assets being transferred under this Agreement is the base sum of Three Hundred Thirty-Three Thousand Eight Hundred Eighty-Five Dollars, ($333,885.00), plus fifty (50%) percent of the net profits of the store from September 1, 1973 to

transaction was anything other than a legitimate sale of a going business. As such, the usury laws do not apply. (*Verbeck* v. *Clymer* (1927) 202 Cal. 557, 563 [261 P. 1017]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 388, pp. 324-325.)

## II

■ Even assuming, as defendants do, for the purpose of argument that the giving and receiving of the promissory note was a loan, the transaction was exempt under the express terms of section 22 of article XX of the California Constitution[3] and section 22053 of the California

December 31, 1973, which sum shall be payable as follows:

"(i) $30,000.00 by cashier's checks delivered to Seller on August 30, 1973 as a down payment to be applied toward the Purchase Price of the inventory;

"(ii) $20,000.00 by the execution and delivery to Seller at the Closing of Buyer's promissory note ('Note #1') in form and substance identical to Exhibit B attached hereto and incorporated herein by reference;

"(iii) $227,513.00 by the execution and delivery to Seller at the Closing of Buyer's promissory note ('Note #2') in form and substance identical to Exhibit C attached hereto and incorporated herein by reference;

"(iv) A sum equal to fifty (50%) percent of the net pre-tax profits of the Store for the period September 1, 1973 to December 31, 1973, calculated in the same manner as net pre-tax profits on the Store shown on those certain financial statements prepared by Virgil Poch and dated September 30, 1973. Said sum shall be payable to Seller on or before February 28, 1973;

"(v) By the assumption by Buyer of trade liabilities the purchase of inventory in the sum of $56,372.00 as of August 31, 1973, all payable within 90 days of the date hereof."

[3]Article XX, section 22, of the California Constitution reads:

"The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the State, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding 10 percent per annum.

"No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 percent per annum upon any loan or forbearance of any money, goods or things in action.

"However, *none of the above restrictions shall apply to* any building and loan association as defined in and which is operated under that certain act known as the 'Building and Loan Association Act,' approved May 5, 1931, as amended, or to any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining industrial loan companies, providing for their incorporation, powers and supervision,' approved May 18, 1917, as amended, or any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining credit unions, providing for their incorporation, powers, management and supervision,' approved March 31, 1927, as amended or *any duly licensed* pawnbroker or *personal property broker,* or any bank as defined in and operating under that certain act known as the 'Bank Act,' approved March 1, 1909, as amended, or any bank created and operating under and pursuant to any laws of this State or of the United States of America or any nonprofit cooperative association organized under Chapter 4 of Division

Financial Code.[4] The face amount of the note exceeded the $10,000 minimum set forth in section 22053. Even prior to the 1970 amendment of section 22053, that section required only that the amount of the loan be "bona fide"; (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594 [86 Cal.Rptr. 793, 469 P.2d 665]). It is nowhere here contended that the face of the note in question had been inflated by any device to make that amount appear to be greater than the actual unpaid purchase price. Under those circumstances, the constitutional and statutory exemption from the usury laws applied to the transaction hereinbefore us.[5]

## III

Since plaintiffs do not suggest the possibility of any amendment that could cure the defects in its case above set forth, we do not, and need

VI of the Agricultural Code in loaning or advancing money in connection with any activity mentioned in said title or any corporation, association, syndicate, joint stock company, or partnership engaged exclusively in the business of marketing agricultural, horticultural, viticultural, dairy, livestock, poultry and bee products on a cooperative nonprofit basis in loaning or advancing money to the members thereof or in connection with any such business or any corporation securing money or credit from any Federal intermediate credit bank, organized and existing pursuant to the provisions of an act of Congress entitled 'Agricultural Credits Act of 1923,' as amended in loaning or advancing credit so secured, nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed. The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonus, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action." (Italics added.)

[4]"The following sections of this division do not apply to any loan of a bona fide principal amount of ten thousand dollars ($10,000) or more, or to any commercial loan of a bona fide principal amount of five thousand dollars ($5,000) or more, or to any commercial loan made to a person engaged in the business of selling goods for the purpose of financing the purchase of goods for resale, or to any commercial loan made in accordance with applicable provisions of the Corporate Securities Law of 1968,[1] the Securities Act of 1933,[2] the Securities Exchange Act of 1934[3] and Regulation T of the Federal Reserve Board, or to a duly licensed personal property broker in connection with any such loan or loans, if the provisions of this section are not used for the purpose of evading this division: Sections 22004, 22005, 22404, 22405, 22450, 22451, 22451.1, 22453, 22454, 22455, 22456, 22457, 22458, 22458.1, 22458.2, 22458.3, 22458.4, 22458.5, 22459, 22460, 22461, 22462, 22463, 22464, 22465, 22467, 22468, 22469, 22470, 22472, 22473, 22474, 22480, 22650, 22651, and 22652."

"1. Section 25000 et seq.
2. 15 U.S.C.A. § 77a et seq.
3. 15 U.S.C.A. § 78a et seq."

[5]Whether public policy might require that a licensed personal property broker be made subject to the usury laws where, as here, it makes a loan in connection with a

not, reach the question of whether the stipulation for judgment upon which the order of dismissal was based bars them from seeking from us leave to amend further.[6]

The judgment (order of dismissal) is affirmed.

Dunn, J., and Jefferson (Bernard), J., concurred.

---

disposition of its own assets rather than in connection with the acquisition of the assets of the borrower, is a matter for the Legislature and not for a court.

[6]The order of dismissal was entered upon a stipulation of the parties, reading as follows:

"Plaintiffs, by and through their counsel Kelly and Graham, by Phillip Kelly, and defendants, by and through their counsel Smith, Hilbig & Chidsey, by Keith K. Hilbig, hereby stipulate that the Court

"1) May enter a nunc pro tunc Order that defendants' general demurrers to plaintiffs' Second Amended Complaint are sustained in their entirety and that plaintiffs' First, Second and Third Causes of Action is [sic] said Second Amended Complaint are dismissed without leave to amend as of September 17, 1975, the date of Hearing of defendants' demurrers to said Second Amended Complaint;

"2) May enter final Judgment in the above-entitled cause, in favor of defendants and each of them and against plaintiffs and each of them, dismissing said Second Amended Complaint, said entry of Judgment being so stipulated for the purpose of facilitating appeal and without prejudice to the rights of the prevailing parties to recover reasonable attorney's fees and costs upon final resolution."