475 P.2d 746

**C. W. MOORE and Shirley A. Moore, husband and wife, Appellants,**

**v.**

**Harry MARK and Mary Alice Mark, husband and wife, Charles Reiss, in his sole and separate right, and Lillian Reiss, wife of Charles Reiss, in her sole and separate right, Appellees.**

**No. 2 CA–CIV 859.**

Court of Appeals of Arizona,
Division 2.

Oct. 21, 1970.

Rehearing Denied Nov. 10, 1970.

262

and were evidenced by unrecorded written contracts of sale.

Mr. Moore needed money in order to complete development of a subdivision in the White Mountains. He went to the Hazel Miller Realty and told Mr. Olrich, a salesman for the company, that he needed some money and was willing to sell his commission contracts. Mr. Olrich put Mr. Moore in contact with one of the appellees for which Moore agreed to pay Hazel Miller Realty ten percent of the total amount of any commissions he eventually sold. Although Moore wanted to borrow the sum of $20,000.00, the original transaction between the parties took the form of a promissory note in the principal amount of $11,200.00. The appellant did not however, receive the sum of $11,200.00, but rather received the sum of $7,000.00. Payment of the promissory note was arranged by the execution by the appellant Moore of a collateral assignment of his real estate commissions in the amount of $700.00 per month until the principal of the note in the sum of $11,200.-00 had been fully paid.

After the note and collateral assignments were executed but prior to the time any payments were accepted by appellees, the original note and collateral assignment was cancelled by the parties. The evidence is in conflict as to the cancellation. The appellees claimed it was cancelled because an attorney informed one of the appellees that the transaction might be usurious. The appellants claimed it was cancelled because they needed the sum of $20,000.00 immediately, but could not make a move since their commission contracts were all tied up by the first agreement. They stated there was no alternative but to pay to the appellees the sum of $500.00 for cancelling the first note and collateral assignment and to enter into the contract which is the subject matter of this transaction.

This agreement provides in part:

"1. That the PARTIES OF THE FIRST PART do hereby sell, assign, transfer and set over to HARRY MARK and MARY ALICE MARK, husband

Engdahl, Jerman, Butler & Estep, by Dean Estep, Phoenix, for appellants.

. L. Tipton Jackson, Tucson, for appellees.

HOWARD, Chief Judge.

The main question involved in this appeal is whether the contract entered into between the parties is usurious.

The appellees filed a complaint against the appellants in the Superior Court of Pima County for breach of contract. The case was tried before the court and appellants appeal from an adverse judgment awarding appellees the sum of $3,967.74.

The facts construed in the light most favorable to upholding the verdict are as follows. In 1965 appellant C. W. Moore was selling real estate in the state of Arizona. As a result of his activities he had the sum of $45,418.02 due and owing to him in real estate commissions. These commissions were payable in monthly installments

and wife, as to a fifty per cent interest, and CHARLES REISS, in his sole and separate right, as to a twenty-five per cent interest, and LILLIAN REISS, in her sole and separate right, as to a twenty-five per cent interest, all their right, title and interest in and to all the commissions and overrides set forth in Schedule A attached hereto and by reference thereto made a part hereof.

2. The purchase price shall be the sum of TWENTY THOUSAND AND NO/100 ($20,000.00) DOLLARS payable as follows:

$7,000.00 receipt of which is hereby acknowledged;

13,000.00 cash payable at closing.

\*     \*     \*     \*     \*     \*

6. \* \* \* If any of the first twenty-seven (27) monthly commission payments of each commission account set forth in the attached schedule becomes delinquent and is not paid for three (3) consecutive installments, or if twice delinquent and is not paid for two (2) consecutive installments, and which delinquency starts before the twenty-seventh monthly payment has been made to the PARTIES OF THE SECOND PART, upon demand therefor, the PARTIES OF THE FIRST PART shall, within twenty (20) days from the effective date of said demand, assign to PARTIES OF THE SECOND PART, a non-delinquent, unencumbered commission contract or a portion thereof not less than the "defaulting" contract as to the remaining principal balance and monthly installment. \* \* \* Such new commission contract replacing the "defaulting" contract, shall itself be subject to replacement by the PARTIES OF THE FIRST PART, if such commission payments are not paid for three consecutive installments or if twice not paid for two consecutive installments within twenty-seven (27) months from the date of the new commission contract. Such date of the new commission contract shall be deemed the date

of the real estate contract to the lot buyer giving rights to said commissions. In the event that any new commission contract provides for the payment of more commissions than that of the defaulting contract, such excess commissions over that amount contained in the defaulting contract shall be refunded to the PARTIES OF THE FIRST PART out of the last payments from such new commission contract. In the event PARTIES OF THE FIRST PART shall fail to replace a contract in accordance herewith, PARTIES OF THE SECOND PART shall have an action at law against PARTIES OF THE FIRST PART for damages."

Subsequent to the execution of the above agreement appellees received payments from the contracts. Some contracts became delinquent and were replaced by the appellants as set forth in the agreement. There were however, some contracts which became delinquent which were not replaced by the appellants and the amount of said delinquencies formed the basis of the judgment in this case.
                ....

At the time of the trial appellees had received, from the contracts, the sum of $21,193.46 in 1967, $7,054.04 in 1968 and $3,795.88 in 1969.

The appellants maintain that the court erred in granting judgment in favor of the appellees for two reasons: (1) Because the contract is usurious and (2) because appellees suffered no damages as a result of any breach of contract.

Usury has been defined by the legislature in A.R.S. § 44–1202:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than eight dollars on one hundred dollars for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest."

In determining whether or not a transaction is usurious the court will disregard the form which the transaction may take and look at its substance in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or monies equivalent; (3) the loan or forbearance; (4) the sum of the loan must be absolutely, not contingently, repayable; (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law. If any one of these requisites is lacking the transaction is not usurious, although it may bear the outward marks of usury. Blaisdell v. Steinfeld, 15 Ariz. 155, 137 P. 555 (1914); Seargeant v. Smith, 63 Ariz. 466, 163 P.2d 680 (1945); Britz v. Kinsvater, 87 Ariz. 385, 351 P.2d 986 (1960).

If the transaction is in fact a sale and not a loan then the defense of usury cannot be asserted. In Goetz v. Phillips, 2 Ariz.App. 370, 409 P.2d 86 (1966) the court distinguished between a loan and a sale as found in Milana v. Credit Discount Company, 27 Cal.2d 335, 163 P.2d 869 (1945):

> " 'A sale is the transfer of the property in a thing for a price in money. The transfer of the property in the thing sold for a price is the essence of the transaction. The transfer is that of the general or absolute interest in property as distinguished from a special property interest. A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use.' " 2 Ariz.App. at 373, 409 P.2d at 89.

Citing the case of *Milana*, supra, the appellant claims that the guarantee of 27 monthly payments found in the contract at hand conclusively establishes a loan and not a sale. The *Milana* case is distinguishable from the instant case on two grounds. First, in *Milana* there was no absolute transfer of the property. Secondly, in *Milana* the amounts guaranteed by the

"transferor" exceeded the lawful rate of interest. In the case sub judice these elements do not appear. There is no contractual provision in this case allowing Moore to repay the appellees and receive the contracts back.

Once a note or a chose in action has been validly issued or negotiated for a valuable consideration, it becomes an article of commerce and can be sold as freely as any other property, the rate of discount being governed by its market value, and the percentage of profit has no relation to the usury law. Goetz v. Phillips, supra. The giving or requiring of additional security at the time of the sale of the note does not render the transaction usurious nor does it make the transaction a loan and not a sale. Goetz v. Phillips, supra; Hallstrom v. Buhler, 14 Utah 2d 111, 378 P.2d 355 (1963). Even if we were to call this transaction a loan, we have computed the amounts that were to be received when the contract was entered into and such amounts add up to *less* than the amount of principal plus the maximum legal rate of interest.

The evidence indicates that at all times the appellants were either trying to effectuate a sale or a loan on the contract. Nowhere in the evidence do the appellants claim this transaction was not intended to be a sale. Their contention seems to be that they entered into the present contract under duress. Appellants did not plead nor prove duress.

Appellants contend that the appellees suffered no damage as a result of the breach of the contract because they have in fact, received much more than the amount guaranteed by the contract. We find this contention to be without merit. The appellees bought two things: The right to 27 monthly payments and the right to receive all amounts if any, over and above the guaranteed sum. That the contracts were subject to a high risk is proven by the fact that a great many of the contracts had to be replaced because of the failure of the buyers to go through with their contracts

to purchase the realty. The appellees are paid for this risk and are now entitled to profit from it. They ran the risk of receiving nothing over and above the 27th monthly payment and should not now be penalized for having made a profit from their gamble.

Judgment affirmed.

HATHAWAY and KRUCKER, JJ., concur.