476 P.2d 892

Everett K. HOWELL and Edith M. Howell, husband and wife, Appellants,

v.

MID–STATE HOMES, INC., Appellee.

No. 2 CA–CIV 805.

Court of Appeals of Arizona,
Division 2.

Nov. 24, 1970.

Rehearing Denied Dec. 23, 1970.

Review Denied Feb. 9, 1971.

Darrell G. Brown, Tucson, for appellants.

George T. Fike, Gust, Rosenfeld & Divelbess, by James M. Koontz, Phoenix, for appellee.

HOWARD, Chief Judge.

Does the fact that the price for a sale on credit is higher than the seller would require if the sale was for cash indicate the existence of usury? That is the issue involved in this case.

Appellants file this appeal claiming the trial court erred in granting summary judgment in favor of the appellees and denying their motion for summary judgment. Appellants allege there was still a genuine issue as to a material fact which precluded the entry of summary judgment and that the record disclosed appellants were entitled to judgment.

The undisputed facts are as follows: Appellants contacted the Jim Walter Corporation for the construction of a home on their property. Jim Walter Corporation quoted two prices to appellants, $6,010.00 if cash were paid, and $10,310.40 in 144 monthly installments of $71.60 each if appellants bought the home on credit.

Appellants, unable to pay the cash price, entered into a building contract with Jim

Walter Corporation whereby they agreed to pay, for labor and materials, the credit price in the manner previously stated. The contract further provided that the $10,310.40 shall bear interest from maturity at 6% per annum until paid. Pursuant to the building contract, appellants executed a promissory note and realty mortgage incorporating the same terms as the building contract in favor of Jim Walter Corporation. Jim Walter Corporation, in exchange for the sum of $5,409.00, assigned the note and mortgage to the appellee, Mid-State Homes, Inc.

Appellants' affidavit in support of their motion for summary judgment alleged that in 1966 a Mr. Gerard, who represented himself as district manager of Mid-State Homes, Inc., called on appellants in connection with the delinquent payment on the note; that in the course of the conversation between the appellants and Gerard, appellants asked if they could have a report from appellee in connection with the interest the appellants paid on the note for the purpose of computing their income tax; that they were advised by Gerard that the company did not furnish reports for this purpose but that the appellants could compute their own interest by subtracting $6,000.00 from the sum of $10,310.40 and divide the balance by 12; that this figure would provide them with the amount of interest they were paying on the note.

The affidavit of Mr. Gerard, attached to the appellee's motion for summary judgment, states that he did have a conversation with the appellants; that during the conversation they did ask how much interest they were paying on the note; that he informed them that the note did not provide for interest until maturity and that they were paying no interest; that the appellants elected to purchase on a time-price basis; that at no time did Mr. Gerard ever indicate to the appellants that the difference between the cash price and the time price was interest.

Usury has been defined by the legislature in A.R.S. § 44–1202:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than eight dollars on one hundred dollars for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest."

In determining whether or not a transaction is usurious, the court will disregard the form which a transaction may take and look at its substance in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or monies equivalent; (3) the loan or forbearance; (4) the sum of the loan must be absolutely, not contingently, repayable; (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law. If any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward marks of usury. Moore v. Mark, 13 Ariz.App. 261, 475 P.2d 746 (filed October 21, 1970).

In Moore v. Mark, supra, we noted that if the transaction is in fact a sale and not a loan or forbearance of debt, the defense of usury cannot be asserted. It is the overwhelming authority in other jurisdictions that the sale of merchandise, either personal property or land, is not usurious when the sale is made for one price if cash is paid and for a higher price if payment is deferred or if payment is made in future installments. See Dennis v. Sears Roebuck & Company, 446 S.W.2d 260 (Tenn.1969) and cases cited therein, 6 Williston, A Treatise on the Law of Contracts § 1685 (Revised ed.); 6A Corbin, Corbin on Contracts § 1500; Restatement of Contracts § 527, illus. at 1026; 55 Am. Jur. Usury § 21. See also annotation in 14 A.L.R.2d 1065 where literally scores of cases sustaining the majority rule are annotated. The rationale set forth in these

cases is that the sale of personal property is not a loan or forbearance of money and it is not within the usury laws unless the transaction is but a mere form or device to evade such laws.

In 55 Am.Jur. Usury § 21 at 338, the following statement appears:

"The owner of property, whether real or personal, has a perfect right to name the price at which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or a much higher price on credit, and it is generally held that a credit sale at an advanced price will not constitute usury, however great the difference between the two prices, so long as it appears that the price charged is in fact fixed for the purchase of goods on credit with no intention or purpose of defeating the usury laws. And it is immaterial that the price fixed for the credit sale is arrived at by adding a per cent to the cash price in excess of the legal rate of interest, * * *"

Only two states have held that time price-differential charges are interest and subject to usury statutes. Sloan v. Sears Roebuck & Company, 228 Ark. 464, 308 S.W.2d 802 (1957); Lloyd v. Gutgsell, 175 Neb. 775, 124 N.W.2d 198 (1963). The holding in the Nebraska case was set aside by an amendment to the Nebraska Constitution expressly validating such charges. As for the Arkansas case, it had to be decided as it was, contrary to all the holdings in the United States, because of the particular language of the Arkansas Constitution which made the result mandatory.

Historically, the usury statute was intended to deal with those problems concerned with the loan of money or the forbearance of debt. Thus, in Arizona it cannot be said our statute was enacted to protect the purchaser from "time-price differentials" under the conditional or installment sales contracts. Legal writers generally point out that the "time-price doctrine" appeared before the advent of large scale credit buying and believe it difficult to justify the differentiation between the consumer being granted the protection of the usury law where making a loan to facilitate a purchase, and being denied the protection when making the same purchase on credit granted by the seller. See Warren, Regulation of Finance Charges and Retail Installment Sales, 68 Yale Law Journal 839 (1959); see also the student notes in 63 W.Va.L. Rev. 42 (1960); 24 Mo.L.Rev. 225 (1959). We believe that any change in the general rule should be dealt with by the legislature and not the courts.[1]

It is incumbent on a motion for summary judgment that the parties "lay their cards on the table." We do not find in the record any material issues of fact which would preclude summary judgment in favor of the appellee. There was nothing presented to the trial court to indicate that Jim Walter Homes, Inc. was in the business of lending money nor is there any record that the appellee had any interest other than as a purchaser of paper.

The record shows that appellee had purchased paper from Jim Walter Homes, Inc. for at least five years prior to the date of the assignment of the note and mortgage. Appellee had also done business with Jim Walter in other states. There was however, no record to show any other connections between Jim Walter and the appellee. The record affirmatively shows that the building contract, note and mortgage were made out by Jim Walter Homes, Inc. and not by the appellee. The record does not show that appellee had anything to do with the transaction until *after* the seller and the purchasers had agreed upon the terms of the contract, note and mortgage.

█ Appellants make no contention that prior to the time the parties reached their agreement the appellee was solicited to make, or that it agreed to make, or that it

---

1. The time-price differential is limited on the sale of motor vehicles by A.R.S. § 44–291 enacted in 1961; see also the time-price differential disclosure required by federal law in 15 U.S.C.A. § 1601 et seq.

at any time did, in fact, make any loan to appellants. There is nothing in the record to condemn the transaction as a subterfuge to conceal a usurious loan. The fact that the note and mortgage is assigned by the seller does not affect the operation of the rule. See annotation 14 A.L.R.3d 1091 et seq.

Assuming the statement concerning computation of "interest" attributed to Mr. Gerard in appellants' affidavit is true, such statement is a gratuitous conclusion on the part of Mr. Gerard and is not sufficient to withstand appellee's motion for summary judgment.

Judgment affirmed.

HATHAWAY and KRUCKER, JJ., concur.